Duane V. HAAS, Plaintiff-Appellant,

v.

WIEBOLDT STORES, INC., Defendant-Appellee.

No. 83–2069.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 17, 1983.

Decided Jan. 12, 1984.

Robert F. Klimek, Remington, Kirkland & Klimek, Chicago, Ill., for plaintiff-appellant.

Catherine A. Sazdanoff, Isham, Lincoln & Beale, Chicago, Ill., for defendant-appellee.

* Hon. Edward Dumbauld of the Western District

Before WOOD and POSNER, Circuit Judges, and DUMBAULD, Senior District Judge.*

POSNER, Circuit Judge.

Duane Haas, a shareholder of Wieboldt Stores, Inc., brought this damage action against Wieboldt under the Securities and Exchange Commission's Rule 14a–7, 17 C.F.R. § 240.14a–7, which so far as pertinent here requires a corporation to mail a shareholder's proxy materials. The district court dismissed Haas's complaint on Wieboldt's motion, so for purposes of this appeal we must assume that the facts alleged in the complaint are true.

Haas wanted to be elected to Wieboldt's board of directors in opposition to Wieboldt's management. The next election was scheduled to be held at a shareholders' meeting on October 1, 1982. Haas requested a copy of Wieboldt's shareholder list so that he could mail his proxy solicitation to the shareholders, but Wieboldt (as it was entitled to do by Rule 14a–7) chose to mail Haas's solicitation to the shareholders itself rather than turn over its shareholder list to him. Haas delivered his materials to Wieboldt for mailing on September 16. That very day, without any advance notice to Haas, and for the purpose (we must assume, since it is alleged in the complaint) of frustrating Haas's election campaign, Wieboldt changed the date of the meeting to November 19, and having done so refused to mail Haas's proxy materials, on the ground that they referred to a shareholders' meeting on October 1 and were therefore inaccurate. Haas claims to have spent $20,000 to prepare the materials for mailing to the 1,500 shareholders of Wieboldt, and he seeks that amount in damages since the materials had to be discarded. (He prepared, and Wieboldt mailed, new materials for the rescheduled meeting. He was not elected.)

The district court dismissed the complaint "for want of jurisdiction," remarking in a brief order that Haas's claim "does not arise under federal law. If any claim exists, it is only cognizable as a common law fraud

of Pennsylvania, sitting by designation.

claim. Diversity jurisdiction is not asserted and does not exist." (Both parties are Illinois citizens.) But Wieboldt had moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure—i.e., not on the ground of lack of federal subject-matter jurisdiction but on the ground that the complaint did not state a claim upon which relief could be granted; and the district judge, just before stating that he was dismissing the complaint for lack of jurisdiction, stated that he was granting Wieboldt's Rule 12(b)(6) motion. We are uncertain, therefore, whether the district court thought that the complaint failed to allege facts showing federal jurisdiction, failed to state a cause of action under federal law, or failed in both ways.

Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), makes it unlawful (with certain immaterial qualifications) for anyone to solicit a proxy in regard to a registered security in violation of regulations promulgated by the SEC. There is no dispute that Wieboldt is subject to section 14(a), or that it engaged in a proxy solicitation, or that Rule 14a–7 is a regulation duly promulgated under section 14(a). The complaint alleges that Wieboldt violated Rule 14a–7 by changing the date of the shareholders' meeting in the manner and for the purpose that it did and that this violation caused damages of $20,-000 to the plaintiff. No more is required to allege federal subject-matter jurisdiction over the complaint. A claim based on a violation of a federal statute is a claim arising under federal law within the meaning of 28 U.S.C. § 1331 (federal question); also (though redundantly, since section 1331 no longer requires a minimum amount in controversy), section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, confers federal jurisdiction specifically over claims of violation of federal securities law. It does not matter whether the plaintiff's claim is meritorious. If that were the test every dismissal would be jurisdictional. Of course if the complaint had failed to allege a fact that was a predicate for the power of the federal court to act, for example that Wieboldt's securities are registered on a

national securities exchange, the complaint would have failed for lack of jurisdiction; the court would not have had the power to reach the question on the merits, which is whether Wieboldt violated the Act. But all the jurisdictional requirements were satisfied. The only question was whether Wieboldt's alleged conduct violated Rule 14a–7, and that was a question on the merits, provided that Haas's claim was not so frivolous as would warrant an inference that federal jurisdiction was being invoked in bad faith; and it was not, as we shall see. The fact that Wieboldt's alleged misconduct may have violated Illinois' common law of fraud as well as Rule 14a–7 is irrelevant to the jurisdictional issue, since the prohibitions of the federal securities law overlap those of state fraud and securities laws.

The complaint would not necessarily fail for lack of jurisdiction even if section 14(a) and Rule 14a–7 did not empower the federal court to grant the remedy the plaintiff wants, namely damages. The Supreme Court held in *Bell v. Hood,* 327 U.S. 678, 685, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946), that a court is not deprived of subject-matter jurisdiction of a case that arises under federal law merely because it may lack the power to provide a particular remedy. But in any event—though the issue, surprisingly, has not arisen before—we think Rule 14a–7 does create an implied private damage remedy. In *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), the Supreme Court held that section 14(a) creates such a remedy, and although the precise rule in question was 14a–9, which forbids misleading proxy materials, rather than 14a–7, we cannot find anything in the Court's opinion, nor can think of any reason ourselves, that would justify a different treatment of the two rules. Damage remedies seem as appropriate and as needful when corporate management prevents a challenger from mailing his proxy materials as when it distributes misleading materials itself. To mail deceptive proxy materials in support of the management slate, and to refuse to mail proxy materials opposing that slate

(i.e., supporting an insurgent), are two sides of the same coin. Cf. *Rosenblatt v. Northwest Airlines, Inc.*, 435 F.2d 1121, 1128 (2d Cir.1970). It is true that *Borak* was decided at a time when the Supreme Court was more hospitable to claims that federal statutes create private damage remedies by implication than it has since become, as evidenced by cases such as *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). But the Court has shown no disposition to reexamine *Borak.* It cited it with apparent approval in its most recent decision involving private rights of action under the securities laws, *Herman & MacLean v. Huddleston,* —— U.S. ——, 103 S.Ct. 683, 686 n. 9, 74 L.Ed.2d 548 (1983). We do not consider the validity of *Borak* an open question at the court of appeals level.

So we think there was federal jurisdiction here. But since the district judge seems from his reference to Rule 12(b)(6) to have thought that even if there was jurisdiction the complaint did not state a cause of action (or perhaps that there was no jurisdiction because the complaint did not state a cause of action), we shall go on and decide whether he was right; otherwise, we are sure to be faced with another appeal after the district judge on remand reinstates his order of dismissal, changing the form from a dismissal for lack of jurisdiction to a dismissal for failure to state a claim. The issue on the merits has been fully briefed.

■ Rule 14a–7(b)(1) provides that "Copies of any proxy statement, form of proxy or other communication furnished by the security holder shall be mailed by the issuer to such of the holders of record ... as the security holder shall designate." Wieboldt did not mail Haas's proxy materials, and this was prima facie a violation. Wieboldt's ground for not mailing the materials was that they contained a false statement, namely that a shareholders' meeting was scheduled for October 1. Ordinarily this would be a good ground for not mailing, cf. Rule 14a–9(a)—but not when the issuer has caused the statement to be false as part of a deliberate effort to frustrate the distribution of an insurgent's proxy materials. The conduct alleged of Wieboldt defeats the purpose of Rule 14a–7(b)(1); by continually changing meeting dates at the last minute, Wieboldt could impose heavy costs on insurgents. We think such conduct violates the rule, and the costs that such conduct imposes—the expenses of preparing proxy materials that must be discarded—are logical damages to assess for the violation.

■ Of course the facts may turn out to be very different from what Haas has alleged; Wieboldt has not even answered the complaint yet. We hold only that if management refuses to mail a challenger's proxy materials it cannot excuse its conduct by pointing to a statement in the materials that management itself has caused to be false in an effort to prevent the mailing. The refusal in these circumstances violates Rule 14a–7, and the proxy solicitor can recover the damages caused by the violation.

REVERSED AND REMANDED.