36 B.R. 683 (1984)
In re Duane and Kay HAAS, Debtors.
WIEBOLDT STORES, INC., Plaintiff,
v.
Duane V. HAAS, Christopher A. Jansen, a/k/a Christopher Jankowski, d/b/a A.J. Christopher & Co., Arthur C. Reck, and Frank H. Gildner, Jr., Defendants.
Bankruptcy No. 82 B 06226, Adv. No. 83 A 2661.
United States Bankruptcy Court, N.D. Illinois, E.D.
January 19, 1984.
*684 *685 *686 Catherine A. Sazdanoff, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff.
Robert F. Klimek, Remington, Kirkland & Klimek, Chicago, Ill., for defendants.

MEMORANDUM OPINION
FREDERICK J. HERTZ, Bankruptcy Judge.
Plaintiff, Wieboldt Stores, Inc., filed this two-count complaint seeking injunctive and monetary relief against defendants, Duane V. Haas, Christopher A. Jansen, a/k/a Christopher Jankowski, d/b/a A.J. Christopher & Co., Arthur C. Reck, and Frank H. Gildner, Jr. In Count I Plaintiff charged that the Defendants, while engaged in a conspiracy and alleged scheme to defraud, violated Sections 10 and 14 of the Securities Exchange Act of 1934 (U.S.C. § 78j, 78n(a) (1981)), and Rules 10b-5 and 14a-9, promulgated by the United States Securities and Exchange Commission (SEC) pursuant to the above statutory provisions. 17 C.F.R. § 240.10b-5, 240.14a-9 (1983).
In Count II Defendants are alleged to have tortiously interfered with Plaintiff's prospective economic advantage, in violation of Illinois common law. Jurisdiction of this court over Plaintiff's securities law claims is predicated upon Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa (1981)). In addition, Plaintiff asserts that this court possesses pendent jurisdiction to entertain its state law claim against the Defendants.
Prior to the transfer of this litigation to this court,[1] Defendants filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted, or in the alternative, to strike certain portions of the complaint, and for a more definite statement, pursuant to Rules 12(b)(6), 12(e) and 12(f) of the Federal Rules of Civil Procedure. The issues pertaining to Defendants' motion to dismiss are fully briefed, and the merits of that motion are now before this court for decision.
In Plaintiff's complaint, it is alleged that the Defendants "conspired" to undertake various measures to defeat a proposed merger between Plaintiff and the QPO Corporation (QPO). That proposal was scheduled to be placed before Plaintiff's shareholders for their approval at a special shareholders meeting set for May 28, 1982. Plaintiff's former management solicited proxies approving the merger from Plaintiff's shareholders on April 30, 1982.
Defendants, pursuant to their alleged conspiracy, distributed a counter-proxy solicitation in opposition to the merger to Plaintiff's shareholders on May 12, 1982. Those counter-proxy solicitation materials are alleged to contain false or misleading statements, in violation of federal securities laws, which include:
1. an alleged false representation of QPO's legal right to unilaterally terminate the merger proposal after receiving *687 the outstanding shares of Plaintiff corporation without paying for those shares;
2. an alleged misrepresentation of the highest trading price of Plaintiff's common stock in the first quarter of the company's 1981 fiscal year (January 1980-January 1981);
3. an alleged misrepresentation that the merger proposal, as tentatively approved by QPO and Plaintiff's management, would prevent Plaintiff from entertaining other "possible" merger/buy-out offers;
4. an omission of material fact, in that Defendant's counter-proxy statement represented that no "participant" in the counter-proxy solicitation had been convicted "in any criminal proceedings of any sort during the past 10 years," while in fact Defendant Christopher Jansen, an alleged paid consultant to Defendants, had been found to have breached certain anti-fraud provision of federal securities laws by an administrative law judge in October 1981;
5. an omission of material fact in that the Defendants' counter-proxy solicitation failed to identify Defendants Haas, Jansen, and Reck as "participants" in the scheme to defeat "the Proposal";
6. an alleged false representation that Defendant Jansen's consulting fee in connection with the counter-proxy effort would be limited to $10,000 when in fact, Defendant Gildner publicly stated on May 24, 1982, that the amount of Jansen's fee was undetermined; and
7. that the counter-proxy statements, without basis in fact, attacked the impartiality of the firm of Duff and Phelps, Inc., which concluded in a report that the purchase price of $5.50 per share offered by QPO for Plaintiff's outstanding common stock was a fair price.
Plaintiff requested both temporary and permanent injunctive relief under Count I, requiring Defendants to correct their alleged false representations to its shareholders at Defendants' expense, and further restraining Defendants or their agents from making additional false statements to Plaintiff's shareholders in connection with the merger proposal, "or any subsequent proposal that QPO may make." In addition, Plaintiff requested an award of $400,000 actual damages, representing both the cost of its original April 30, 1982, proxy solicitation in favor of the merger proposal, as well as a later solicitation mailed in response to Defendants' proxy solicitation of May 12, 1981.
In Count II, Plaintiff alleged that in addition to the false and misleading statements contained in the counter-proxy solicitation materials, the Defendants employed other devices, including the filing of five sham lawsuits against the Plaintiff, QPO, and others, which suits are identified by docket number in Count II. Also, Defendants are alleged to have made false statements in the "media" to the effect that 1) Plaintiff's management, motivated by conflict of interest, had rejected other bona fide offers of purchase for Plaintiff's common stock; 2) that Plaintiff's management had undervalued its corporate book assets, and that the $5.50 per share price offered by QPO in connection with the merger proposal was too low; and 3) that Defendants opposed the merger proposal in good faith.
These activities, according to Plaintiff, eventually led QPO to withdraw its proposal to merge with Plaintiff, apparently before Plaintiff's shareholders had the opportunity to vote in favor or against the merger proposal. In their memorandum of law, Plaintiff contends that these activities of Defendants are chargeable under Illinois law as a tortious interference with Plaintiff's prospective economic advantage. As damages under Count II, Plaintiff requested injunctive and monetary relief similar to that requested in Count I. In addition, however, Plaintiff has requested actual damages of $1,188,402.50, allegedly caused when the value of its common stock was depressed on May 28, 1982, allegedly as a result of the Defendants' activities. Plaintiff further sought actual damages of $15 million, in the event Plaintiff became insolvent due to "financial problems which the [merger] Proposal was designed to solve." *688 Finally, Plaintiff requested punitive damages in the amount of $20 million on account of the "willful and fraudulent nature of defendants' acts."

DISCUSSION
The obligation of the court when reviewing a motion to dismiss is to examine the pleadings in a light most favorable to the non-movant, taking well pleaded allegations as true, and the motion should not be granted unless it clearly appears that plaintiff can prove no set of facts under its pleadings which would entitle it to the relief requested. Mathers Fund, Inc. v. Colwell Co., 564 F.2d, 780, 783 (7th Cir.1977); McIntosh v. Magna Systems, Inc., 539 F.Supp. 1185, 1189 (N.D.Ill.1982). Nonetheless, the above rule does not require that the parties proceed to trial where the cause of action alleged is substantively deficient. Havoco of America, Ltd., v. Shell Oil Co., 626 F.2d 549, 553 (7th Cir.1980). In this case, the court concludes that Plaintiff's complaint is substantively deficient in several respects, and that the Defendant's motion to dismiss shall be granted.
Section 10(b) and Rule 10b-5
In their motion to dismiss directed toward Count I, Defendants contend that such Count fails to state a claim under either Section 10(b) of the Securities Exchange Act of 1934 (the Act) or Rule 10b-5 as promulgated by the SEC, because that Count does not contain an allegation that Plaintiff was defrauded in connection with its purchase or sale of a security, by any action taken by Defendants. Defendants correctly observe that both Sections 10(b) and Rule 10b-5 were enacted to remedy fraud in connection with the purchase or sale of securities. Frischling v. Priest Oil & Gas Corp., 524 F.Supp. 1107, 1111 (N.D.Ill. 1981). Plaintiff does not allege in Count I that it was defrauded in its purchase or sale of securities by any misstatements of fact or false representations attributed to the Defendants. Absent such an allegation, Plaintiff would lack standing to sue Defendants under Section 10(b) of the Act, or Rule 10b-5, even if Plaintiff's shareholders could take action against Defendants under those sections. Wright v. Heizer Corp., 560 F.2d 236, 246 (7th Cir.1977), cert. denied, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). Accordingly, Count I of Plaintiff's complaint fails to state a claim upon which relief can be granted under Section 10(b) of the Act or Rule 10b-5, and that portion of Count I which is predicated upon those provisions is dismissed.
Section 14 and Rule 14a-9
In attempting to charge Defendants with violation of Section 14 of the Act as well as violation of Rule 14a-9, Count I of Plaintiff's complaint suggests that the Defendants committed fraud, rather than negligence, in their inclusion of allegedly false representations and omissions of material fact in their May 13, 1982, counter-proxy solicitation materials. Defendants challenge the sufficiency of those allegations, contending that Plaintiff failed to plead its allegations of fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).
Federal Rule of Civil Procedure 9(b) is applicable to an action arising under Section 14 and Rule 14a-9 where, as here, the allegations of the complaint sound in fraud rather than in negligence. Cf. Todd v. Oppenheimer & Co., Inc., 78 F.R.D. 415, 419 n. 4 (S.D.N.Y.1978); Billet v. Storage Technology Corp., 72 F.R.D. 583, 585-86 (S.D.N.Y.1976). The policy of Rule 9(b) is to: 1) inhibit the filing of a complaint as a pretext for discovery of unknown wrongs; 2) protect potential defendants from the harm that comes to their reputations when they are charged with the commission of acts involving moral turpitude; and 3) insure that allegations of fraud are particularized enough to give reasonable notice to the defendants of the conduct complained of. Adair v. Hunt International Resources Corp., 526 F.Supp. 736, 744 (N.D.Ill.1981). These policies are furthered by the requirement that when pleading fraud, the plaintiff must specify the time, place and contents of the false representations at issue, *689 as well as the identity of the persons making the misrepresentations. Securities and Exchange Commission v. GSC Enterprises, Inc., 469 F.Supp. 907, 911 (N.D.Ill.1979); Rich v. Touche Ross & Co., 68 F.R.D. 243, 246 (S.D.N.Y.1975).
Where multiple parties are alleged to have conspired to undertake the illicit actions charged, it is not sufficient for the pleader merely to allege the existence of a conspiracy. Segal v. Gordon, 467 F.2d 602, 608 (2d Cir.1972); Frischling v. Priest Oil & Gas Corp., 524 F.Supp. 1107, 1111 (N.D.Ill. 1981). Instead, a plaintiff is required to provide multiple defendants with reasonable notice of the part each defendant is alleged to have taken in the scheme. Adair v. Hunt International Resources Corp., 526 F.Supp. 736, 744 (N.D.Ill.1981). In addition, the plaintiff should include an allegation respecting the object or benefit obtained by the co-conspirators as a consequence of the fraud. Fidenas AG v. Honeywell, Inc., 501 F.Supp. 1029, 1039 (S.D.N.Y.1980); Todd v. Oppenheimer & Co., Inc., 78 F.R.D. 415, 420-21 (S.D.N.Y.1978). If, due to the nature of the conspiracy, those specific facts are not within the personal knowledge of the plaintiff, it is nonetheless required that the pleader set forth in its complaint those facts which led it to conclude that the individual defendants were involved in the alleged scheme. Segal v. Gordon, 467 F.2d 602, 608 (2d Cir.1972); Stromfeld v. Great Atlantic & Pacific Tea Co., Inc., 484 F.Supp. 1264, 1270 (S.D.N.Y.); aff'd, 646 F.2d 563 (2d Cir.1980). In light of these case authorities, the court is compelled to conclude that Count I as it pertains to allegations under Section 14 and Rule 14a-9 does not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).
As noted by Plaintiff, Count I does provide Defendants with fair and sufficient notice of the identity of the statements contained in Defendants' counter-proxy materials which are alleged to be false and misleading. Those alleged false statements were distributed to Plaintiff's shareholders on May 13, 1982, when the counter-proxy materials were mailed. The alleged fraudulent character and import of those statements is fully set forth in Count I.
Nor is Count I deficient for want of verification, as contended by Defendants. Rule 9(b) merely requires that allegations of fraud be stated with particularity. Verification by parties with personal knowledge of the matters alleged therein is not required. Fed.R.Civ.P. 9(b).
A more serious claim is raised by Defendants respecting the failure of Count I to differentiate amongst the four Defendants involved herein, regarding their individual participation in the alleged conspiracy. Paragraph 12 of Count I asserts in conclusory terms that the Defendants conspired "prior to April 30, 1982" to defeat the merger proposal. Federal Rule of Civil Procedure 9(b) requires that reasonable notice be given to multiple defendants of the nature of their alleged individual participation in a conspiracy or fraudulent scheme. A blanket statement such as that found in Paragraph 12 of Count I, that all Defendants were responsible, at some time or another for the alleged fraudulent conduct, will not suffice. Segal v. Gordon, 467 F.2d 602, 608 (2d Cir.1972); Adair v. Hunt International Resources Corp., 526 F.Supp. 736, 744-45 (N.D.Ill.1981); Frischling v. Priest Oil & Gas Corp., 524 F.Supp. 1107, 1111 (N.D.Ill. 1981); Kennedy v. Nicastro, 503 F.Supp. 1116, 1121 (N.D.Ill.1980). For this reason, Defendants' motion to dismiss Count I of Plaintiff's complaint is granted. Plaintiff, however, is granted leave to file an amended complaint within 30 days following the entry of the order which accompanies this Memorandum Opinion.
In addition to these pleading questions, Defendants have interposed two further objections in their motion to dismiss Count I. First, Defendants question Plaintiff's standing to complain of Defendants' alleged violation of Section 14 of the Act and Rule 14a-9. Also, in their supplemental motion to dismiss, Defendants suggest that Plaintiff's complaint for equitable and monetary relief is now moot, in light of events which have occurred since May 1982.
*690 Defendants' objection to Plaintiff's standing to assert the Section 14 and Rule 14a-9 claims is not meritorious. Plaintiff, as the target corporation of a merger proposal, has standing to complain of Defendants' alleged violation of Section 14 and Rule 14a-9 in connection with the merger proposal. See Studebaker Corp. v. Gittlin, 360 F.2d 692, 695 (2d Cir.1966); Calumet Industries, Inc. v. MacClure, 464 F.Supp. 19, 28 (N.D.Ill.1978); See generally J.I. Case Co. v. Borak, 377 U.S. 426, 431-33, 84 S.Ct. 1555, 1559-60, 12 L.Ed.2d 423 (1964).
Defendants' suggestion of mootness, as it pertains to both counts of Plaintiff's complaint, presents a number of more serious issues. Plaintiff's complaint, distilled to its essence, charges Defendants with misconduct under both federal and state law, which misconduct ultimately led QPO to withdraw its offer to purchase all outstanding common shares of Wieboldt stock at $5.50 per share in connection with the proposed merger. Plaintiff requests injunctive relief requiring Defendants to correct their alleged false representations made concerning the QPO offer, and to prevent Defendants' future interference with other buy-out offers QPO might make. However, shortly after the QPO offer was withdrawn, the price of Wieboldt common stock began to appreciate in value. Currently, Wieboldt stock has since sold at nearly twice the $5.50 price offered by QPO in Spring 1982.
In light of these developments, of which the court takes judicial notice, the court concludes that Plaintiff's request for an injunction requiring Defendants to correct the alleged fraudulent representations contained in their counter-proxy solicitation is now moot. Sawyer v. Pioneer Mill Co., Ltd., 300 F.2d 200, 202 (9th Cir.1962). No legitimate interest can now be served by requiring Defendants to "correct" any false representations they may have uttered to Plaintiff's shareholders in May 1982. Granting such relief now, almost two years following the withdrawal of the merger proposal by QPO, would constitute a punitive measure which this court is not inclined to impose.
As for the request for injunctive relief directed toward the future activities of Defendants respecting QPO, the court also considers such request to be moot. Nothing in the current record indicates that QPO presently intends to initiate any further merger/buy-out proposals respecting the Plaintiff. Nor does it appear of record that QPO has had any interest since May 1982, in taking such action. It is within this court's discretion to deny a request for injunctive relief where it is apparent that the conduct complained of is not likely to recur. Schutt Manufacturing Co. v. Riddell, Inc., 673 F.2d 202, 207 (7th Cir.1982); Issacs Brothers Co. v. Hibernia Bank, 481 F.2d 1168, 1170 (9th Cir.1973). Plaintiff's request in Counts I and II for injunctive relief is stricken with leave granted to Plaintiff to assert those claims anew if future circumstances require.
In addition, it appears that some portions of Plaintiff's request for monetary damages in connection with Count I should be stricken. In that count, Plaintiff requested actual damages of $400,000 based upon the expenses of both its original proxy solicitation which issued April 30, 1982, as well as for its second solicitation effort which was issued in response to Defendants' May 13, 1982, counter-proxy solicitation. It is established that Plaintiff, in a case such as this, may be entitled to recover out-of-pocket damages occasioned by the Defendants' alleged violation of federal securities laws. Madigan, Inc. v. Goodman, 498 F.2d 233, 239 (7th Cir.1974). However, only the cost of Plaintiff's second proxy solicitation effort may properly be considered part of the potential out-of-pocket expense which may be recovered by Plaintiff in this action. See Maldonado v. Flynn, 477 F.Supp. 1007, 1010 (S.D.N.Y.1979). Plaintiff's request in Count I for monetary damages attributed to its April 30, 1982, proxy solicitation effort is stricken with prejudice.
Intentional Interference with Prospective Economic Advantage
In its memorandum in response to Defendants' motion to dismiss, Plaintiff *691 asserts that Count II of its complaint states a cause of action against Defendants under the Illinois tort of intentional interference with prospective economic advantage. Illinois has long recognized the tort of intentional interference with prospective economic advantage. See, e.g. Parkway Bank & Trust Co. v. City of Darien, 43 Ill.App.3d 400, 402, 2 Ill.Dec. 234, 236-37, 357 N.E.2d 211, 213-14 (1976). To establish such a claim proof is required that: 1) plaintiff has a valid business expectancy; 2) the defendant knows of the expectancy; 3) the defendant intentionally interferes and prevents the realization of the business relationship; and 4) the defendant's interference actually damages the plaintiff. Bank Computer Network Corp. v. Continental Illinois National Bank, 110 Ill.App.3d 492, 500, 66 Ill.Dec. 160, 166, 442 N.E.2d 586, 592 (1982); Belden Corp. v. Internorth, Inc., 90 Ill.App.3d 547, 552, 45 Ill.Dec. 765, 768-769, 413 N.E.2d 98, 101-102 (1980); Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 16 Ill.App.3d 709, 713-14, 306 N.E.2d 549, 553 (1973), modified on other grounds, 61 Ill.2d 129, 334 N.E.2d 160 (1975). The conduct which constitutes the "interference" must be directed towards a specific third party or class of third parties with whom the plaintiff expects to do business. McIntosh v. Magna Systems, Inc., 539 F.Supp. 1185, 1193 (N.D.Ill.1982); DP Service, Inc. v. AM International 508 F.Supp. 162, 168 (N.D.Ill.1981); Parkway Bank & Trust Co. v. City of Darien, 43 Ill.App.3d 400, 403, 2 Ill.Dec. 234, 237-38, 257 N.E.2d 211, 214-15 (1976). In addition, the interference must be wrongful, Panter v. Marshall Field & Co., 646 F.2d 271, 298 (7th Cir.) cert. denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981), in the sense that the conduct of the defendants must constitute malicious (i.e., unjustified and wrongful) conduct. Meadowmoor Dairies, Inc. v. Milk Wagon Drivers' Union, 371 Ill. 377, 382, 21 N.E.2d 308, 311-12 (1939); aff'd, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941). Furthermore, Illinois law requires that as part of its prima facie case, plaintiff plead and prove that the defendant acted without legal justification in connection with defendant's interference with plaintiff's business expectancy. Panter v. Marshall Field & Co., 646 F.2d 271, 298 (7th Cir.), cert. denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); Swager v. Couri, 77 Ill.2d 173, 184-85, 32 Ill.Dec. 540, 544, 395 N.E.2d 921, 925 (1979); Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association, 37 Ill.2d 546, 551, 229 N.E.2d 514, 518 (1967). With these standards in mind, it becomes apparent that portions of Count II of Plaintiff's complaint are defectively pleaded.
Initially, the court observes that the majority of the allegations found within Count II fail to meet the minimum requirements of Federal Rule of Civil Procedure 9(b). To the extent Plaintiff claims that the alleged false statements found in Defendants' May 12, 1982, counter-proxy solicitation formed part of the Defendants' intentional interference with its merger expectancy with QPO, those allegations are insufficiently pleaded for the same reasons discussed earlier: failure to differentiate between the alleged fraudulent conduct of the individual Defendants. To the extent Plaintiff alleges that Defendants made other false statements regarding the proposed merger in the "media" those allegations fail to sufficiently set forth the time and place of those utterances, as well as the identity of the parties responsible for making them.
It is also clear that the right to be free of interference in one's business expectancies, under Illinois law, is a limited one, which is subject to the reasonable rights of others. Specifically, directors, officers and shareholders are privileged to intercede in the economic affairs of the corporation which they own, or which employs them. H.F. Philipsborn & Co. v. Suson, 59 Ill.2d 465, 474, 322 N.E.2d 45, 50 (1974); see generally Gasbarro v. Lever Brothers Co., 490 F.2d 424, 426 (7th Cir. 1973); Zeinfeld v. Hayes Freight Lines, Inc., 41 Ill.2d 345, 349, 243 N.E.2d 217, 221 (1968). Efforts by such parties to influence the conduct of their corporation lose their privileged status only upon a showing of actual malice. Zeinfeld v. Hayes Freight *692 Lines, Inc., 41 Ill.2d 345, 349, 243 N.E.2d 217, 221 (1968).
In this case, it is acknowledged that Defendants Haas, Reck and Gildner were shareholders of Plaintiff in May 1982, and that Defendant Jansen was employed by those parties at that time as their agent, in connection with the counter-proxy solicitation effort. These parties were conditionally privileged to interfere with Plaintiff's expectancy that the QPO merger proposal would be approved. Plaintiff was therefore required to allege that these parties acted with malice in connection with their counter-proxy solicitation effort. Although malice may be generally averred, Stearn v. MacLean-Hunter, Ltd., 46 F.R.D. 76, 79 (S.D.N.Y.1969), Count II contains no allegation that Defendants Reck, Gildner, or Jansen acted with actual malice in connection with their alleged scheme. Indeed, the stated "object" of the Defendants' alleged scheme (to defeat the merger proposal), seems to be one which the Defendants, as shareholders of Plaintiff, were entitled to pursue with vigor. Absent an allegation that those parties proceeded with actual malice in their attempt to defeat the merger proposal, Count II fails to state a cause of action.
Notwithstanding the dismissal of Count II, several comments need be directed to Plaintiff's request for injunctive and monetary relief under that count.
In Count II, Plaintiff requested injunctive and monetary relief similar to that requested in Count I. For reasons earlier set forth, Plaintiff's request for injunctive relief in Count II is considered moot, and is stricken. Further, Plaintiff's request for an award of actual damages representing the costs of its April 30, 1982, proxy solicitation effort is also stricken for the same reasons earlier set forth.
Plaintiff has also requested an award of $1,188,402.50 in damages, representing the difference in price of Plaintiff's common stock between the $5.50 offered by QPO in its merger proposal, and the closing price of Plaintiff's common stock on the New York Stock Exchange on May 28, 1982. In addition, Plaintiff requests damages "possibly as great as $15,000,000," in the event that Defendants' alleged interference with the proposed merger agreement with QPO would render Plaintiff's common stock valueless. These requests for alleged actual damages are improper, wholly speculative, and must be stricken. Rubenstein v. IU International Corp., 506 F.Supp. 311, 316 (E.D.Pa.1980); Tonchen v. All-Steel Equipment, Inc., 13 Ill.App.3d 454, 461, 300 N.E.2d 616, 621 (1973). The court notes that if Plaintiff's actual damages could properly be predicated upon fluctuations in the price of its common stock, then Count II would be subject to immediate dismissal with prejudice. A prima facie element of the tort of intentional interference with prospective economic advantage, is that the party injured must actually incur damage as a result of the interference. See Bank Computer Network Corp. v. Continental Illinois National Bank, 110 Ill.App.3d 492, 500, 66 Ill.Dec. 160, 166, 442 N.E.2d 586, 592 (1982). If damages are to be determined on the basis of open market fluctuations in Plaintiff's stock, it would appear, with the steady appreciation in value of Plaintiff's common stock, that Plaintiff accumulated more benefits than injuries as a result of the withdrawal of the QPO merger proposal.
Finally, it is noted that Plaintiff has requested an award of $20,000,000 in punitive damages against these Defendants in connection with Count II. Plaintiff correctly notes that punitive damages may be awarded in connection with the tort of intentional interference with prospective economic advantage. Defendants' motion to strike Plaintiff's request for an award of punitive damages would be denied.

CONCLUSION
The court concludes that Count I of Plaintiff's complaint fails to state a claim upon which relief can be granted under Sections 10 and 14 of the Securities Exchange Act of 1934, and pursuant to Rules 10b-5 and 14a-9 as promulgated by the *693 Securities and Exchange Commission. Count I is therefore dismissed with leave granted to amend in accordance with this opinion.
Count II of Plaintiff's complaint is dismissed without prejudice. Defendants' motion to strike Plaintiff's request for equitable and monetary relief is granted in part and denied in part, as is set forth in this Memorandum Opinion.
NOTES
[1] The cause, originally filed in the United States District Court for the Northern District of Illinois, Eastern Division, was transferred to this court by order entered October 4, 1983, when it was disclosed to the District Court that Defendant Duane V. Haas had filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101 et seq. (Supp. V 1981).