**CNW CORPORATION, Plaintiff,**

v.

**JAPONICA PARTNERS, L.P.,
et al., Defendants.**

**JAPONICA PARTNERS, L.P., and Paul
B. Kazarian, Defendants and
Counterclaim–Plaintiffs,**

v.

**Robert W. SCHMIEGE, et al.,
Counterclaim–Defendants,**

**and**

**CNW Corporation, Plaintiff and
Counterclaim–Defendant.**

**Civ. A. No. 89–125 LON.**

United States District Court,
D. Delaware.

Nov. 5, 1990.

Kenneth J. Nachbar and Robert J. Valihura, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Harold C. Hirshman (argued), Robert B. Milner, Stuart Altschuler and Elpidio R. Villarreal, Sonnenschein Carlin Nath & Rossenthal, Chicago, Ill., of counsel), for plaintiff and counterclaim-defendant.

William Prickett, and Wayne J. Carey, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del. (Andrew J. Levander (argued) and Joseph Giovanniello, Jr., Shereff, Friedman, Hoffman & Goodman, New York City, of counsel), for defendants and counterclaim plaintiffs.

## OPINION

LONGOBARDI, Chief Judge.

This case arose in the context of a hostile takeover attempt. The Plaintiff target corporation commenced this action alleging that the Defendants violated sections 13(d) and 14(a) of the Securities Exchange Act. The Defendants were unsuccessful in their attempt to gain control of the target and have moved this Court to dismiss the Plaintiff's complaint as moot.

## PROCEDURAL HISTORY AND FACTS

The Plaintiff CNW Corporation ("CNW") alleges that the Defendants developed a plan to take over CNW. Japonica Partners, L.P. ("Japonica"), one of the Defendants, initially developed coinvestor agreements and later formed several limited partnerships with the purpose of providing funding for the takeover of CNW. Written materials called Project Eagle were developed to attract investors. Japonica apparently engaged Phoenix Capital as its broker for the purchase of CNW stock. Japonica began buying CNW stock and on March 13, 1989, owned approximately 8.8% of CNW's outstanding shares. On March 16, 1989, Mr. Kazarian, one of the Defen-

dants, filed a Schedule 14B regarding the Defendants' solicitation of proxies from CNW shareholders.

CNW responded by commencing this lawsuit on March 16, 1989. The Plaintiff's amended complaint filed as a matter of right on March 28, 1989, alleged that the Defendants were in violation of sections 13(d) and 14(a) of the Securities Exchange Act. 15 U.S.C. §§ 78m(d), 78n(a). Specifically, CNW alleged that the Schedules 13D and 14B filed by the Defendants were misleading because they were incomplete.

On March 16, 1989, CNW also moved this Court for a preliminary injunction. With respect to the Defendants' alleged section 13(d) violations, CNW requested that this Court: order Japonica and Defendant Lederman to file amended Schedules 13D; enjoin Japonica from purchasing CNW stock for thirty days after filing the corrected schedules; enjoin Japonica from voting any shares at the May, 1989, CNW shareholder meeting; order Japonica to offer to rescind purchases made during the period of March 18, 1988, until the filing of the corrected schedules; order Japonica to divest itself of any remaining shares of CNW that it acquired during this period; and permanently enjoin the Defendants from further violations of the securities laws. Based on the alleged section 14(a) violation, CNW asked this Court to: require Japonica to file an amended Schedule 14B; enjoin Japonica from soliciting proxies until Japonica filed the amended schedule; issue an order declaring that the proxies previously obtained by Japonica were null and void; and permanently enjoin the Defendants from violating the securities laws.

This Court denied CNW's motion for a preliminary injunction on April 14, 1989. CNW appealed that decision on April 18, 1989.

On May 10, 1989, 874 F.2d 193, the Court of Appeals for the Third Circuit issued an order enjoining the Defendants from soliciting proxies for the May, 1989, meeting until they disclosed the names of the limited partners and the names of the parties to the co-investor agreements. On that date, Japonica amended Schedule 14B to comply with the Court of Appeals' order.

On May 16, 1989, Japonica lost the proxy contest at CNW's annual shareholder meeting.

The Court of Appeals' opinion was filed on May 18, 1989. The opinion upheld this Court's decision not to issue a preliminary injunction based on the failure of Japonica to disclose the Eagle Trust books and the Phoenix Capital agreement. The Court of Appeals held, however, that the Defendants' failure to disclose the identity of the limited partners and the contents of the co-investor agreements violated section 14(a).

On May 19, 1989, CNW filed a proposed second amended complaint and moved this Court to allow the amendment. The second amended complaint included several more counts based on other alleged violations of section 14(a). The most substantial changes were in the remedies requested; CNW asked for a declaratory judgment that Japonica had violated sections 13(d) and 14(a) of the Securities Exchange Act and damages equal to CNW's expenses in advertising to combat Japonica's illegal proxy solicitations.

On June 6, 1989, Japonica sold 943,000 shares of CNW stock bringing its ownership down to approximately 3% of CNW's outstanding shares. Docket Item ("D.I.") 122, Exhibit ("Ex.") 4. Japonica filed amendments to Schedules 14B and 13D on June 6 and 7, 1989, indicating that its ownership of CNW stock was below the 5% threshold required for reporting under section 13(d) and announcing the withdrawal of its tender offer. *Id.,* Ex. 3, 4.

Counsel for the Defendants filed a motion to dismiss the second amended complaint as moot and for failure to state a claim upon which relief could be granted.[1] On September 27, 1990, the Court heard oral argument on whether the Plaintiff's

---

1. The parties briefed this motion as if this Court had granted the Plaintiff's motion to file a sec-   ond amended complaint.

second amended complaint should be dismissed.

## ANALYSIS

### 1. *CNW's Motion to File a Second Amended Complaint*

Federal Rule of Civil Procedure 15(a) provides that "leave to amend a complaint shall be freely given when justice so requires." The Court of Appeal's order and the Defendants' subsequent disclosure allowed the Plaintiff to discover information it did not know prior to May 10, 1989. The second amended complaint was filed May 19, 1989, and incorporated this new information. There was no undue delay on CNW's part. The parties are not close to trial so the amendment does not work unfair surprise or hardship on the Defendants. The Plaintiff's motion to file a second amended complaint is granted.

### 2. *The Defendants' Motion to Dismiss*

The Defendants argue the Plaintiff's second amended complaint should be dismissed on two grounds: the complaint is moot and the complaint does not state a claim for which relief can be granted. The Defendants argue that the issue of whether this Court should grant equitable relief is mooted by the Defendants' loss of the proxy contest and sale of their CNW stock. Furthermore, the Defendants contend that the Plaintiff is not entitled to damages because the Plaintiff's claim fails to allege the type of causation required to recover damages under section 14(a).

In opposition, the Plaintiff argues that injunctive relief is appropriate because there is a reasonable likelihood that the Defendants will continue to violate sections 13(d) and 14(a). The Plaintiff also argues that this Court has the jurisdiction to issue a declaratory judgment regarding the Defendants' past conduct. Finally, counsel for CNW argues that section 14(a) does provide a basis for allowing CNW to recover expenses incurred in responding to Japonica's illegal proxy solicitation.

### (a) *The Standard on a Motion to Dismiss*

To grant a motion to dismiss, this Court must take all well pleaded allegations as true, interpret the complaint in the light most favorable to the plaintiff and determine if the plaintiff may be entitled to relief under any reasonable reading of the pleadings. *Colburn v. Upper Darby Tp.,* 838 F.2d 663, 665–66 (3rd Cir.1988).

### (b) *Appropriateness of Injunctive Relief*

In order for a private party to seek an injunction for a violation of the securities laws, one of the elements the private plaintiff must show is that the plaintiff will suffer irreparable harm without the remedy. *See, e.g., Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 57, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975) (the traditional standards for extraordinary equitable relief apply in private actions under the securities laws); *Kaufman and Broad, Inc. v. Belzberg,* 522 F.Supp. 35, 45 (S.D.N.Y.1981) (injunctive relief in a private action under section 13(d) may be awarded only upon a showing of irreparable harm).

In cases where injunctions have been granted, the defendant was actively acquiring stock in, or attempting to take over the target corporation at the time the injunction issued. *See, e.g., CNW Corp. v. Japonica Partners, L.P.,* 874 F.2d 193 (3rd Cir.1989); *cf., Corenco Corporation v. Schiavone & Sons, Inc.,* 488 F.2d 207, 215 (2d Cir.1973) (Court of Appeals affirmed District Court's removal of injunction after the defendant complied with the disclosure requirements). When the threat of takeover is not imminent, an injunction is not warranted. *See Rondeau,* 422 U.S. at 59, 95 S.Ct. at 2076 (injunction not appropriate where a technical violation of section 13(d) was not accompanied by a tender offer); *Trane Co. v. O'Connor Securities,* 718 F.2d 26, 27–28 (2d Cir.1983) (where defendant sold all of its stock in the target company the question of injunctive relief was moot because, although defendant could conceivably acquire enough stock to be subject to 13(d) again, there was no

reason to suppose the defendant would continue to engage in illegal activity); *In re Haas*, 36 B.R. 683, 689–90 (Bankr.N.D.Ill. 1984) (request for prospective injunctive relief under section 14(a) moot where merger proposal was withdrawn).

■ In this case, the Plaintiff has not alleged that CNW will be irreparably harmed by the Defendants' present conduct if an injunction does not issue. The Defendants are not currently attempting to acquire CNW. The Defendants do not own enough CNW stock to be subject to section 13(d). The Defendants are not soliciting CNW proxies, therefore, they are not currently subject to section 14(a). If Japonica begins acquiring CNW stock and soliciting CNW proxies in violation of the securities laws in the future, CNW can ask this Court to enjoin Japonica's behavior at that time. Because CNW has failed to allege any threatened irreparable injury, this Court finds that CNW is not entitled to an injunction under sections 13(d) or 14(a).[2]

#### (c) *Appropriateness of Declaratory Relief*

■ The Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, does not provide a basis for jurisdiction; rather, it provides a remedy when jurisdiction already exists. *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3rd Cir.1979); *Akzona Inc., v. E.I. du Pont de Nemours & Co.*, 662 F.Supp. 603, 609 (D.Del.1987). If jurisdiction does exist, deciding whether or not to issue a declaratory judgment is within the sound discretion of the court. *Akzona*, 662 F.Supp. at 617.

■ If past violations of the securities laws will have no present or future effect, courts will not issue declaratory judgments regarding the unlawfulness of the past conduct. *Compare Browning Debenture v.*

*DASA Corp.*, 524 F.2d 811, 814, 816–17 (2d Cir.1975) (declaratory relief inappropriate where directors elected by allegedly illegal proxy were no longer in office and plaintiff claimed no monetary damage) *with Wisconsin Real Estate Inv. Trust v. Weinstein*, 530 F.Supp. 1249, 1251 (E.D.Wis. 1982) (if the proxy materials used in connection with the past election contributed to the results of the most recent election, the claim for injunctive and declaratory relief is not moot).

■ In this case, Japonica no longer owns enough CNW stock to be subject to section 13(d). A declaration that the Defendants' previous Schedule 13Ds were materially misleading will not aid the public in determining whether or not to invest in CNW now.

The Court of Appeals has held that Japonica was violating section 14(a) and Japonica made a corrective disclosure. Subsequently, Japonica lost the proxy contest. This Court's declaration that the Defendants' past proxy solicitation was illegal will not aid shareholders in evaluating a future proxy solicitation.

Counsel for CNW argues that declaratory relief is appropriate because a declaration that Japonica violated the law would be useful for CNW in defending against the Defendants' counterclaims of waste and entrenchment. The Court declines to issue a declaratory judgment where its prospective effect would be so limited. If necessary, this Court can address the legality of the Defendants' conduct in the context of CNW's affirmative defenses to the Defendants' counterclaims.

#### (d) *CNW's Claim for Damages under Section 14(a)*

■ CNW has alleged that Japonica violated section 14(a) by issuing false proxy

---

**2.** Counsel for CNW argues that a showing of irreparable injury is not necessary because there is a reasonable likelihood that the Defendants will violate the securities laws in the future. The cases cited by counsel for CNW to support this proposition are ones where the Securities Exchange Commission was the plaintiff. D.I. 125 at 15. Counsel for the Plaintiff is apparently confusing the standards for private and public enforcement of the securities laws. The Securities Exchange Commission has statutory authority to seek injunctions for violations of the securities laws. 15 U.S.C. §§ 77t, 78u. The SEC is not required to show irreparable injury. *S.E.C. v. Foundation Hai*, 736 F.Supp. 465, 471 (S.D.N.Y.1990). The SEC standard does not apply to private plaintiffs.

materials and, as a result, CNW had to spend money on defensive advertising which CNW would not have spent if Japonica's materials were truthful. The issue before the Court is whether a corporation that has incurred expenses by responding to an illegal proxy solicitation can use section 14(a) to recover those costs. For the purposes of the Defendants' motion to dismiss, the Court is assuming that CNW can prove that its expenses were caused by the illegality of the Defendants' proxy solicitation and were not incurred merely because the Defendants attempted to solicit proxies. The Plaintiff's claim is a matter of first impression for this Court.

In *J.I. Case v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964), the United States Supreme Court stated that "[t]he purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." The Court went on to state that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *Id.* at 433, 84 S.Ct. at 1560.

There are two cases in the Seventh Circuit which suggest that this type of damage might be recoverable under 14(a). In *Haas v. Wieboldt Stores, Inc.*, 725 F.2d 71 (7th Cir.1984), the Court of Appeals for the Seventh Circuit held that a complaint stated a cause of action under section 14(a) when it alleged the following facts: the plaintiff was a corporation attempting to take over a target corporation; the target corporation violated section 14(a) by improperly changing the date of the shareholder's meeting; as a result of the target's action, the proxy materials prepared by the plaintiff were worthless; and the plaintiff was damaged in the amount of the cost of the worthless proxy materials.

In a related case in Bankruptcy Court, the Northern District of Illinois Bankruptcy Court noted that a target company's costs of responding to a misleading proxy solicitation might be recoverable under section 14(a). *In re Haas*, 36 B.R. at 689–90.

This Court has found no precedent which suggests CNW's damages are not recoverable under section 14(a). Counsel for the Defendants argue that CNW has not pled the requisite causation required to recover under section 14(a). D.I. 121 at 11–13. The Court does not find the cases cited by the Defendants' counsel instructive. The underlying issue in most of those cases was whether the damages alleged by the shareholders were caused by violations of section 14(a) or some other intervening factors. *E.g., Schlick v. Penn–Dixie Cement Corporation*, 507 F.2d 374 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975) (section 14(a) violation or directors' breach of fiduciary duty); *Rediker v. Geon Industries, Inc.*, 464 F.Supp. 73 (S.D.N.Y.1978) (section 14(a) violation or shareholder's failure to sell); *Halle & Stieglitz, Filor, Bullard Inc. v. Empress Intern.*, 442 F.Supp. 217 (D.Del. 1977) (section 14(a) violation or breach of directors' fiduciary duty). There is no similar issue before this Court.

■ Counsel for the Defendants also argue that the Plaintiff's claim for damages must fail because CNW has not pled damages with sufficient particularity to give the Defendants proper notice. CNW's complaint does not allege a dollar amount but it does state that the Plaintiff has "incurred substantial proxy solicitation expense because of the defendants' § 14(a) violation." D.I. 110 at 34. The Plaintiff asks for monetary damages "including the amount of plaintiff's proxy solicitation expense (other than plaintiff's March 30, 1989 Annual Meeting Proxy Statement)." *Id.* The Court finds that this meets the requirements of Federal Civil Procedure Rule 8(a).

Because *Borak* directs federal courts to be liberal in granting remedies under section 14(a) and because there is some case law to suggest CNW has pled a valid claim for damages under section 14(a), CNW's claim for damages will not be dismissed.

## CONCLUSION

Because the Defendants have lost the CNW proxy contest and have subsequently sold their CNW stock, the issue of whether

to grant injunctive relief for violations of sections 14(a) and 13(d) is moot. This Court will decline to issue a declaratory judgment in this case because it would have little or no prospective effect. Finally, the Plaintiff's claim for damages may be addressed under section 14(a), therefore, that claim provides a basis of jurisdiction for this Court.