**ROYAL BUSINESS GROUP, INC. and American Business Group, Inc., Plaintiffs,**

v.

**REALIST, INC., Frank H. Roby, Gerald S. Parshalle, Michael S. Ariens, Richard H. Bromley, R. Ron Heiligenstein, Charles D. Jacobus, and Marshall A. Loewi, Defendants.**

**Civ. A. No. 89–2352–T.**

United States District Court, D. Massachusetts.

Nov. 29, 1990.

Michael L. Chinitz, Constance M. McGrane, Valerie S. Carter, Edward P. Leibensperger, Nutter, McClennen & Fish, Boston, Mass., for plaintiffs.

Michael Fischer, Maureen McGinnity, Foley & Lardner, Milwaukee, Wis., David L. Kelston, Friedman & Atherton, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiffs brought this action to recover expenses incurred in connection with an unsuccessful proxy contest. Royal [1] alleg-

---

**1.** The two plaintiffs in this action are Royal Business Group, Inc. ("Royal"), and its wholly-owned subsidiary American Business Group, Inc. ("ABG").

es that Realist[2] failed to comply with its disclosure obligations under the federal securities laws. Specifically, plaintiffs allege that defendants violated Section 14(a) of the Securities Exchange Act of 1934 ("the '34 Act").[3] Royal contends that it would have withdrawn its acquisition offer, and not conducted a proxy contest, if Realist had disclosed in its proxy materials its plans to acquire Ammann Laser Technik, AG ("Ammann"), a Swiss-based company.

## I

In March, 1988, Royal's wholly-owned subsidiary, ABG, began purchasing Realist's common stock. Over the next ten months, Royal initiated a series of communications with Realist to discuss its intention to acquire all of Realist's outstanding shares. After Realist rejected Royal's offers, Royal nominated two candidates for election to Realist's Board of Directors at Realist's June 6, 1989 annual meeting. In its proxy solicitation for votes in favor of its nominees, Royal sought a referendum on its tender offer to acquire Realist. According to the Inspector of Elections, Royal's candidates won by a very narrow margin. Realist successfully challenged the election results in the Delaware Chancery Court. *See Parshalle and Ariens v. Roy and Martin*, 567 A.2d 19 (Del.Ch.Ct.1989). The Delaware court ordered a new election.

On June 30, 1989, Realist publicly disclosed its acquisition of Ammann. Upon learning of the Ammann acquisition, Royal immediately withdrew its offer to acquire Realist. Realist proceeded to conduct a special election on December 15, 1989. Prior to the special election, Realist sent shareholders proxy materials that disclosed, *inter alia*, facts relating to the Ammann transaction and other matters that Royal contends Realist should have disclosed in the proxy materials it sent shareholders prior to the June 6, 1989 annual meeting. Royal and AMG did not contest the special election, and the shareholders elected Realist's nominees.

## II

Royal filed this action on October 20, 1989 to recover $350,000 in damages for its expenses in connection with the proxy contest and subsequent litigation in the Delaware Chancery Court. Count I of plaintiffs' complaint alleges defendants violated Section 14(a) of the '34 Act. Count II alleges that defendants' actions constituted common law fraud.

Defendants moved to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6). Defendants argue that plaintiffs lack standing to assert a claim under Section 14(a) of the '34 Act. In addition, defendants contend that plaintiffs' common law fraud claim fails as a matter of Massachusetts law. Plaintiffs insist that they have standing under Section 14(a). In addition, plaintiffs contend that Delaware law, not Massachusetts law, controls their common law fraud claim.

## III

### THE SECTION 14(a) CLAIM

Section 14(a), and the rules promulgated thereunder, prohibit the solicitation of proxies by means of materially false and misleading statements. 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a–9 (1990). The purpose of Section 14(a) is to protect the general integrity of shareholders' corporate suffrage. *J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). As the Court explained in *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375,

---

**2.** In addition to Realist, Inc. ("Realist"), eight past and present directors of Realist are also defendants.

**3.** Rule 14a–9(a), promulgated under the '34 Act, states:

No solicitation subject to this regulation shall be made by means of any proxy statement, ... which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9(a) (1990).

381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970), "The provision was intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.'"

In *Borak*, the Court recognized a private right of action for shareholders under Section 14(a). 377 U.S. at 430–31, 84 S.Ct. at 1558–59. The Court concluded that "[w]hile [Section 14(a)] makes no reference to a private right of action, among its chief purposes is 'the protection of investors,' which certainly implies the availability of judicial relief where necessary to achieve that result." *Id.* at 432, 84 S.Ct. at 1559. The Court's reasoning in *Borak* anticipated the test the Court later announced it would follow "in determining whether a private remedy is implicit in a statute not expressly providing one." *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). Under that test, the availability of a private remedy under Section 14(a) depends on a finding that plaintiffs are among the class of persons for whose "especial benefit the statute was enacted" and that the remedy sought is "consistent with the underlying purpose of the legislation." *Id.*

Applying this test to the facts here, plaintiffs fail to state a cognizable claim under Section 14(a). As a preliminary matter, Royal is not even a shareholder of Realist, and plainly lacks standing to assert a claim based on shareholders' voting rights. Royal's wholly-owned subsidiary, ABG, does own Realist stock. ABG's claims do not, however, proceed from its shareholder status, but rather its status as a proxy contestant. Neither Royal nor ABG, therefore, fall within the class of persons for whose "especial benefit the statute was enacted." *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088.

*Bolton v. Gramlich*, 540 F.Supp. 822 (S.D.N.Y.1982), also involved a demand for reimbursement of proxy expenses. In *Bolton*, the trustees of a real estate investment trust issued a proxy statement proposing amendments to the Declaration of Trust that would require a supermajority vote on mergers and other significant transactions. The proposed amendments reflected the trustees' desire to ward off takeover attempts. Plaintiffs/shareholders there issued a proxy statement that urged rejection of the proposed amendments and that initiated a tender offer for the Trust. Before the deadline for the tender of shares, the trustees launched a drastic divestment program and voted to terminate the Trust. Unable to acquire the trust, plaintiffs sued the trustees under Section 14(a). Plaintiffs claimed that the trustees failed to disclose that they would vote to terminate the Trust if the shareholders rejected the proposed amendments. Plaintiffs argued that they would not have mounted a takeover attempt had they known of the trustees' intention. Plaintiffs demanded reimbursement of their proxy expenses. *Id.* at 827–29.

The court in *Bolton* stated that the plaintiffs were nothing more than "disappointed tender offerors who strain to find protection in federal law." *Id.* at 827. It recognized that "to state a cause of action [under Section 14(a), plaintiffs] must be the parties for whose 'especial benefit' Congress undertook to regulate proxy statements." *Id.* at 833. The court also noted that as tender offerors, plaintiffs were persons "Congress intended to regulate, not to protect." *Id.* at 833–34. As a result, it held that plaintiffs failed to state a claim under Section 14(a). *Id.* at 834.

Plaintiffs here are similarly situated to those in *Bolton*. Both waged costly, unsuccessful proxy contests, and later sued to recover their expenses. Both claimed that they would not have waged a proxy contest, if the existing management had complied with the disclosure requirements of Section 14(a). This court agrees with Judge Sand's holding in *Bolton* that disappointed tender offerors, such as plaintiffs here, are not among the class of persons "for whose 'especial benefit' Congress undertook to regulate proxy statements." *Id.* at 833 (quoting *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)).

Plaintiffs' reliance on *Haas v. Weibolt Stores, Inc.*, 725 F.2d 71 (7th Cir.1984) is misplaced. The facts of this case differ substantially, however, from those in *Haas*. There, a proxy contestant who desired a seat on the defendant company's board of directors delivered his proxy materials to the company for mailing. *Id.* at 72. The company subsequently changed the date of the shareholder's meeting, and refused to mail out plaintiff's proxy materials on the ground that the materials were inaccurate because they misstated the date of the meeting. *Id.* at 73. After the contestant prepared new, accurate materials, he brought an action against the company for the expenses he incurred in preparing the first set of proxy materials. Not surprisingly, the court held that "the expenses of preparing proxy materials that must be discarded are logical damages to assess for [defendants' Section 14(a)] violation." *Id.* at 74.

*Haas* does not in any way undermine the soundness of *Bolton*. Unlike this case, in which plaintiffs claim a violation of Rule 14a–9, *Haas* involved a violation of Rule 14a–7, which requires a corporation to mail an insurgent's proxy materials. The violation in *Haas*, therefore, directly implicated shareholders' voting rights. The defendant in *Haas* had a specific duty to mail plaintiff's proxy materials. In contrast, Rule 14a–9 does not impose a duty upon management to pay the proxy expenses of a unsuccessful tender offeror.

Plaintiffs do not allege that defendants' alleged nondisclosures had any impact whatsoever upon shareholder votes, even in connection with the June 6, 1989 meeting. Instead, plaintiffs contend that they would not have conducted a proxy contest if defendants had complied with the disclosure requirements of Section 14(a). Plaintiffs fail, however, to demonstrate that they belong either to the class of persons for whose "especial benefit the statute was enacted" or that the remedy they seek is "consistent with the underlying purpose of the legislation." *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088. *See also Mann v. Oppenheimer & Co.*, 517 A.2d 1056, 1063, (Del. 1986) ("[S]ecurities laws require neither the disclosure of indefinite or contingent plans nor the prediction of future actions."). As a result, plaintiffs' Section 14(a) claim is DISMISSED.

## IV

## THE COMMON LAW FRAUD CLAIM

To prevail on its claim of common law fraud, plaintiffs must demonstrate that defendants owed them a duty to disclose the information omitted from the proxy materials, including, in particular, defendants' plans to acquire Ammann.[4] *See, e.g., Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del.1983) (liabili-

4. The parties dispute whether Massachusetts or Delaware law should apply to plaintiffs' common law fraud claim. A federal court ordinarily must apply the choice-of-law rules of the State in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Massachusetts has adopted a "hybrid" approach to choice of law determinations in tort actions, applying the law of the place where the injury occurred unless a different jurisdiction has a more significant interest. *See Alves v. Siegel's Broadway Auto Parts, Inc.*, 710 F.Supp. 864, 870–71 (D.Mass.1989). Here, plaintiffs seek to recover expenditures made in reliance on defendants' allegedly false and misleading proxy solicitations. Defendant Realist is a Delaware corporation, and the director defendants are all Florida or Wisconsin citizens. Delaware law, therefore, applies to plaintiffs' common law fraud claim. *See Hoffman v. Optima Systems, Inc.*, 683 F.Supp. 865, 872 (D.Mass.1988) ("Massachusetts law requires that a court look to the law of the state of incorporation to determine the corporation's liability to its stockholders or creditors."); *Beacon Wool Corp. v. Johnson*, 331 Mass. 274, 279, 119 N.E.2d 195, 198–99 (1954) ("Since the company was a Delaware corporation we must look to the law of that jurisdiction to determine the liability of the defendants for their acts as directors."). At any rate, application of Massachusetts law to plaintiffs' common law fraud claim would lead to the same result reached here. *Compare Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1, 5 (1st Cir.1984) (failure to disclose information not actionable under Massachusetts law absent duty to disclose) *with Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del.1983) ("[F]raud does not consist merely of overt misrepresentations. It may also occur through deliberate concealment of material facts, *or by silence in the face of a duty to speak.*") (emphasis added).

ty for common law fraud includes failure "to reveal that which it is his duty to disclose...."). Plaintiffs have attempted to meet this burden by alleging a general fiduciary duty of directors to make disclosures to shareholders about matters requiring shareholder approval. This effort fails for two reasons.

First, plaintiffs have not established that any actions in connection with defendants' acquisition of Ammann required such approval. Second, plaintiffs have not demonstrated that an election of directors normally gives rise to any affirmative duty to disclose pending corporate transactions, and they have articulated no reasons why this particular election merits different treatment.[5] Because the defendants, therefore, had no duty to disclose, plaintiffs' common law fraud claim is also DISMISSED.

---

Sharen Litwin, Asst. U.S. Atty., Boston, Mass., for the U.S.

James Degiacomo and Susan Baronoff, Boston, Mass., for Cletus Thomas.

### MEMORANDUM

TAURO, District Judge.

---

**5.** Plaintiffs also claim that even if defendants do not owe them a fiduciary duty, they are nevertheless liable "for their half truths." Opposition at 12–13. Specifically, plaintiffs contend that defendants failed to disclose information regarding changes in the size of the Board of

Directors and their plans to appoint Mr. Ammann to the Board. Plaintiffs do not, however, point to any specific statements which, in light of this undisclosed information, were false when made.