PARKWAY BANK AND TRUST COMPANY, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF DARIEN *et al.*, Defendants-Appellees.

Second District (1st Division)   No. 75-325

Opinion filed November 17, 1976.—Rehearing denied December 10, 1976.

Robert S. Minetz and Robert J. DiLeonardi, both of DiLeonardi & O'Brien, of Des Plaines, for appellants.

James R. Schirott, William Kurnik, and J. S. Judge, all of Judge & Schirott, of Park Ridge, and Ancel, Glink, Diamond & Murphy, of Chicago, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Parkway Bank and Trust Company, as owner in trust of a 20-acre tract of real estate in the City of Darien, and Ceisel-McGuire Industries, as beneficiary of the trust, sued the defendant City, its mayor, aldermen and members of the Darien Plan Commission. They alleged defendants rezoned the 20-acre tract for a less intensive use without legal justification. Count I of plaintiffs' complaint seeks to declare the rezoning invalid and is presently pending in the trial court. Counts II, III, and IV, however, were dismissed. Plaintiffs appeal from the judgment which was made final.

Count II is entitled "A Common Law Tort Action for Damages" and is based upon the claim that the defendants knowingly and illegally interfered with plaintiffs' prospective business advantage by their conduct. The complaint includes the following allegations in substance. In 1971, when part of the real estate was located within the City of Darien and part within the unincorporated area of Du Page County, plaintiffs' predecessors obtained annexation of the unincorporated portion to the City of Darien. Upon annexation all of the subject property was zoned from the R-2 single-family dwelling district to the R-3 multiple-family dwelling district which allowed the development of 343 dwelling units on the property with a special use for a planned unit development. In good faith reliance upon the annexation and rezoning, plaintiffs' predecessors invested large sums of money for architectural and engineering fees, the purchase of adjoining property and incurred other expenses. They also contributed a large sum to the school district. In December of 1973 plaintiffs purchased the property at a price which reflected the new zoning classification and allege they would not have purchased the property if they were unable to construct the 343-unit development. In addition, plaintiffs expended further sums in reliance upon the zoning classification. Plaintiffs' actions notwithstanding, defendants individually and in their official capacity on about July 1, 1974, authorized the rezoning of the property from its present classification to a planned unit development with a special use for the density of not more than 4 units to an acre and further directed that of the 80 units permitted, 42 were to be single-family residences. Plaintiffs allege these acts were done without

legal authority and with knowing and intentional disregard for the law. In the alternative, plaintiffs claim defendants failed to ascertain and apply the law before acting upon the zoning. In this Count plaintiffs seek $350,000 in damages.

■■ In *Herman v. Prudence Mutual Casualty Co.*, 41 Ill. 2d 468 (1969), where the tort was defined in terms of section 766 of the Restatement of the Law of Torts, the court states at page 473:

" 'Except as stated in Section 698 [which is not here relevant], one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) perform a contract with another, or

(b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby.

Part (b) of the ensuing comments would lend support to plaintiffs' argument that there is a general duty not to purposely interfere with another's contractual expectancies from third persons. It also, however, is there indicated that a privilege to interfere, even in contractual relationships, may exist dependent upon the methods used (b), interest of the interferer (c), purpose (d), ill will (m), and other factors more specifically dealt with in section 767 * * *."[1]

The prospective business relation with another need not be evidenced by an enforceable contract. In *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App. 3d 359 (1973), the court stated at page 363:

"The elements which establish a prima facie tortious interference are the existence of a valid business relationship (not necessarily evidenced by an enforceable-contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. The interest protected is the reasonable expectation of economic advantage."

Plaintiffs, however, in Count II do not allege an interference with either

---

[1] The tentative draft of the Second Restatement adds an additional paragraph:
"§766A. *Intentional Interference with Prospective Contracts*

One who purposely induces or otherwise purposely causes a third person not to enter into or continue a prospective contractual relation with another, other than that of a contract to marry, is subject to liability to the other for loss of benefits of the relation." Restatement (Second) of Torts §766A (Tent. Draft No. 14, 1969).

The Committee Comments note that this is the "second half of the old §766" and further note: "This Section has been added to the first Restatement, in order to divide the old §766 into two parts, and so avoid a lengthy and unduly cumbersome section and Comments. No change in substance is intended." Id., Explanatory Notes §766A, at 50, 53.

a business relation with specific third parties or with an identifiable prospective class of third persons.

■■ In each of the cases cited by the plaintiffs (*Doremus v. Hennessy*, 176 Ill. 608 (1898), *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App. 3d 359 (1973)) there are allegations that some specific third party was induced by a defendant to refrain from dealing with a plaintiff. Other cases which we have found are limited on their facts to situations in which a contractual arrangement with an identifiable third party is at least contemplated. (See, *e.g., Leo Spear Construction Co. v. Fidelity & Casualty Co.*, 446 F.2d 439, 446 (2d Cir. 1971); *American Hot Rod Association, Inc. v. Carrier*, 500 F.2d 1269, 1275 (4th Cir. 1974); *NAACP v. Overstreet*, 221 Ga. 16, 142 S.E.2d 816 (1965); *Fitt v. Schneidewind Realty Corp.*, 81 N.J. Super. 497, 196 A.2d 26, 29 (1963); *Colorado Insurance Group, Inc. v. United States*, 216 F. Supp. 787, 792 (D. Colo. 1963).) The broadest scope of recovery for interference with the business relationship of a plaintiff with unspecified third parties appears to be found in *Willis v. Santa Ana Community Hospital Association*, 26 Cal. Rptr. 640, 376 P.2d 568, 570 (1962). In *Willis*, the court entertained an action for interference with a doctor's relationship with his prospective patients when the defendant governing association of the hospital refused to permit the plaintiff physician to use hospital facilities and it was alleged that the purpose of the refusal was to restrain competition for the benefit of the association membership. On the facts pleaded in the complaint before us no conspiracy to restrain competition in order to benefit the competing members of the conspiracy is alleged as in *Willis*. And the allegations contained in Count II fall far short of pleading a cause of action based on interference with a business relationship between the plaintiff and specific third parties or any clearly identifiable group of third parties contemplating prospective contractual arrangements with the plaintiff.

Moreover, the cause of action which plaintiffs seek to establish is a "purposely" caused tort. (See *Herman v. Prudence Mutual Casualty Co.*, 41 Ill. 2d 468, 473 (1969).)[2] Although the plaintiffs state in cursory language that the defendants "intentionally interfered with the plaintiffs' business affairs concerning the subject property without legal justification and against legal precedent" none of the particular acts stated allege that the defendants purposely caused a third person not to enter into or continue with prospective contractual relationship. There are no facts stated in the complaint to suggest that defendants had as their purpose the

---

[2] See Restatement (Second) of Torts, Explanatory Notes §766A, comment d at 52 (Tent. Draft No. 14, 1969):

"*Intent and purpose*. In order for the rule stated in this Section to apply, the defendant must not only have intended the interference, but must have acted in part at least for the purpose of accomplishing it. In this respect the rule here stated differs from that stated in §766 as to intentional interference with existing contracts."

interference with plaintiffs real estate business as is required to support an allegation that defendants interfered with prospective contractual relations of the plaintiffs. Thus, because Count II omits the basic elements of the cause of action it was properly dismissed because no set of facts could be proved under the pleadings which would entitle plaintiffs to relief. See *Courtney v. Board of Education*, 6 Ill. App. 3d 424, 425 (1972).

■■ Count III in substance purports to state a cause of action under the Federal Civil Rights Act of 1871 (42 U.S.C.A. §1983) based on the claim that defendant knowingly violated plaintiffs' constitutional property rights. Essentially, plaintiffs rely upon the same acts stated in Count II. We agree, however, with defendants' argument that an alleged deprivation of State-created rights is not a deprivation of constitutional rights within the meaning of section 1983. An alleged right to have State laws strictly obeyed is not a Federal right protected by the United States Civil Rights Act. (See *Saunders v. Cahill*, 359 F. Supp. 79, 83 (N.D. Ill. 1973).) The owner of property does not acquire immunity against the exercise of the police power of the State merely because he acquires or constructs property in full compliance with existing laws. (*Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 90 L. Ed. 1096, 66 S. Ct. 850, 852 (1946).) A section 1983 cause of action, however, may properly be based upon deprivation of rights guaranteed by the United States Constitution, including the guaranty against taking property without just compensation, provided that the deprivation is not sufficiently related to a public purpose when balanced against the diminished value of the property. *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 8 L. Ed. 2d 130, 82 S. Ct. 987, 990 (1962).

Count III even by the most liberal construction represents only a claim that plaintiffs' property has been significantly diminished in value without the balancing of a proper public purpose. (*Nectow v. City of Cambridge*, 277 U.S. 183, 72 L. Ed. 842, 48 S. Ct. 447 (1928).) This is far short of charging that the governmental action is so onerous as to constitute a taking which constitutionally requires compensation. (See *Goldblatt v. Town of Hempstead*, at 990.) Further, in construing the complaint we must also keep in mind that we are considering a claim against public officials who have acted in the field of zoning where municipal officials traditionally have power to act and who therefore have certain privileges and immunities attend upon their official action.

Defendants have argued that they are public officials and thus that their acts are legislative in nature which are granted State immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—101 *et seq*.) or that common law immunity (see *Blair v. Walker*, 64 Ill. 2d 1 (1976); *Pechous v. Slawko*, 64 Ill. 2d 576 (1976)), attaches so as to absolutely privilege their acts under section 1983. Plaintiffs argue that immunities granted under

Illinois immunity statutes are inapplicable for the reason that section 1983 actions are not common law tort proceedings, citing *Luker v. Nelson,* 341 F. Supp. 111 (N.D. Ill. 1972); but that in any event the immunity act (Ill. Rev. Stat. 1973, ch. 85, par. 2—201) does not extend absolute immunity for malicious abuses of discretion. See *Young v. Hansen,* 118 Ill. App. 2d 1, 8-9 (1969).

The conclusion we reach does not wholly agree either with the views of the plaintiff or of the defendants on these issues. Section 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." (*Imbler v. Pachtman,* ___ U.S. ___, 47 L. Ed. 2d 128, 96 S. Ct. 984, 989 (1976).) A determination of section 1983 immunity requires "a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." (*Imbler v. Pachtman,* at 990.) Upon analysis the alleged acts of the defendants are not wholly legislative in nature as defendants claim. The described acts partake of both legislative and administrative characteristics since the same individuals both enact and administer the zoning law and their action in a sense regulates only the right of the plaintiffs. Under the authorities which we find most persuasive the defendants may thus be said to be possessed of a qualified immunity which may not protect them against defending a properly pleaded section 1983 charge that they acted maliciously. See *Wood v. Strickland,* 420 U.S. 308, 43 L. Ed. 2d 214, 95 S. Ct. 992 (1975); *Hampton v. City of Chicago,* 484 F.2d 602, 607 (7th Cir. 1973); *Rasmussen v. City of Lake Forest,* 404 F. Supp. 148, 158 (N.D. Ill. 1975).

Plaintiffs, however, have failed to allege that the defendants acted with malice or to state circumstances from which malice could be inferred.[3] The pleadings do not show circumstances which demonstrate that the defendants clearly and arbitrarily misused the police power of the State as exercised by the city for the purpose of depriving plaintiffs of their constitutional rights. Nor do the pleadings allege facts which amount to a violation of the basic unquestioned constitutional rights of the property owners. In substance the allegations amount to a claim that the defendants applied the city zoning laws in an erroneous manner. The bulk of the allegations amount to a claim of estoppel because of various expenditures the plaintiffs claim to have made in reliance upon the former

---

[3] The United States Supreme Court has defined malice as consisting of two elements involving both objective and subjective criteria.

"[I]n the specific context of school discipline, we hold that a school board member is not immune from liability for damages under 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student." *Wood v. Strickland,* 420 U.S. 308, 43 L. Ed. 2d 214, 95 S. Ct. 992, 1001 (1975).

zoning which they allege was known to the defendants. This does not state Federal constitutional right but amounts only to a claim of a protection granted by the State despite the change in zoning classification.[4] This claim that the plaintiffs have thereby acquired vested rights to the prior zoning is beyond the protection provided by the Federal Constitution. Illinois courts are not permitted to impose restrictions on the police power beyond those imposed by the United States Supreme Court if those restrictions are based in Federal constitutional law. (See *Oregon v. Hass*, 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215, 1219 (1975). See also *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 8 L. Ed. 2d 130, 82 S. Ct. 987.) The claim, however, is cognizable under the pleading of Count I since the State is free as a matter of its own law to impose greater restrictions on the police power than those held to be necessary upon Federal constitutional standards.

At the least it must be concluded that a substantial question may be raised whether defendants' actions deprive plaintiffs of their constitutional rights. On this basis an award of damages against public officials with qualified immunity "would be inimical to the efficient functioning of government." (*Rasmussen v. City of Lake Forest*, 404 F. Supp. 148, 159.) Although plaintiffs' allegations of deprivation of Federal constitutional rights are to be construed in their favor the allegations are insufficient to support a claim for damages against the public official with qualified immunity. Therefore the trial court properly dismissed Count III.

■■ We also conclude that the trial court properly dismissed Count IV of plaintiffs' amended complaint. This count sought a permanent injunction against all the defendants to restrain them from taking any action by enactment of ordinances or otherwise the effect of which would be to modify the prior zoning of the property which permitted development for 343 multiple-family units.

■■ A well-pleaded complaint praying for injunctive relief must contain on its face a clear right to relief and state facts which establish the right to such relief in a positive certain and precise manner. (See *McErlean v. Harvey Area Community Organization*, 9 Ill. App. 3d 527, 529 (1972).) Conclusion, opinion or belief is insufficient. (*Hope v. Hope*, 350 Ill. App. 190 (1953).) Specifically, plaintiffs allegation that it "fear[s] that unless permanently restrained" defendant will cause suspension, modification, or repeal of the 1971 ordinances is not adequate statement

---

[4] *Rasmussen v. City of Lake Forest*, 404 F. Supp. 148, 159, states that even where government officials are granted qualified immunity they are still absolutely immune "to damages in the absence of malice ° ° ° whenever at the time of the action a substantial question could be raised as to whether or not the action in question creates a deprivation of constitutional rights."

of the claim. Even if the 1974 zoning is found void that in and of itself does not state a claim for injunctive relief. One instance of illegality does not establish a failure of legal remedies. *McErlean v. Harvey Area Community Organization*, 9 Ill. App. 3d 527, 529-30.

The courts will not attempt to control the discretionary or legislative powers vested by law in municipal corporations and will therefore not prohibit the passing of an ordinance. *Stevens v. St. Mary's Training School*, 144 Ill. 336, 351 (1893); *Roby v. City of Chicago*, 215 Ill. 604, 608-09 (1905). See also *Slack v. City of Salem*, 31 Ill. 2d 174, 177 (1964).

We therefore affirm the judgment of the trial court.

Affirmed.

GUILD, P. J., and RECHENMACHER, J., concur.