**Randolph L. COOK, Plaintiff,**

v.

**Oprah WINFREY, Defendant.**

**No. 97 C 322.**

United States District Court, N.D. Illinois, Eastern Division.

July 9, 1997.

Anthony C. Campanale, Lee Scott Perres, John S. Mondschean, Marcus, Perres, Campanale & Weiner, Chicago, IL, James A. Karamanis, Sorokas & Karamanis, Chicago, IL, for Plaintiff.

Steven Francis Molo, Julie Anne Bauer, David James Doyle, Winston & Strawn, Chicago, IL, for Defendant.

### MEMORANDUM OPINION

KOCORAS, District Judge.

This matter is before the court on the defendant's motion to dismiss the plaintiff's amended complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, this motion is granted, and the complaint is dismissed.

### BACKGROUND

The following factual allegations are contained in the plaintiff's amended complaint. We are obligated to assume the truth of these allegations for purposes of deciding the motion to dismiss, without regard to whether they are in fact true or false. Plaintiff Randolph Cook ("Cook") is a resident of Columbus, Ohio. Defendant Oprah Winfrey ("Winfrey") is a television talk-show host living in Chicago. Cook and Winfrey had a relationship in the past, during which time Cook asserts that he and Winfrey used cocaine on a regular basis. In January, 1995, Cook was in contact with several media organizations with regard to publishing articles pertaining to his relationship with Winfrey. While he was entertaining offers from these organizations, Winfrey made statements both publicly and privately to third-persons concerning their relationship and drug use. Cook asserts that Winfrey made statements indicating that he was a liar, that he could not be trusted or believed, that he would be sorry if he told anybody else his story, and that they had never had a prior relationship. Winfrey allegedly made similar statements in the Na-

tional Enquirer of February 18, 1997. Cook also was attempting to seek compensation for the publication of his experiences with Winfrey in early 1995. Due to the statements made by Winfrey (discussed above), Cook's opportunity to market his story was interfered with and he was prevented from entering into an agreement with any outlet to sell his story.

As a result of the statements allegedly made by Winfrey, Cook filed a complaint against her on January 16, 1997. He subsequently filed an amended complaint which contained claims of defamation per se, defamation per quod, tortious interference with prospective economic advantage, tortious interference with contract, and intentional infliction of emotional distress. In response, Winfrey filed the motion to dismiss which is presently before us. Before we turn to the merits of this motion, we will outline the legal standard which guides our inquiry.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.), *cert. denied*, 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993); *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 172, 133 L.Ed.2d 113 (1995). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.), *cert. denied*, 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed.R.Civ.P. 10(c). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993). It is with these principles in mind that we turn to the motion before us.

## DISCUSSION

In this present motion, Winfrey seeks to dismiss all of the counts alleged against her in Cook's amended complaint. We will discuss each count in turn below. First, however, we must make a choice-of-law decision with regard to several claims in Cook's complaint.

In Counts I, III, IV, V, VI, and VII, Cook alleges conduct by Winfrey which occurred at a time when they were both living in Chicago. As such, these claims are governed by Illinois law. However, in Counts II and IV, Cook alleges that Winfrey defamed him while he was living in Ohio by allegedly stating that he was a "liar" in the National Enquirer. For these counts, therefore, a choice of law question exists: does Illinois law or Ohio law apply? As a federal district court sitting in Illinois, we utilize Illinois choice-of-law principles when a conflict situation develops. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Under Illinois conflicts law, when a multistate defamation case arises, the applicable law is that of the victim's domicile. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916

(7th Cir.1994), *cert. denied,* 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 855 (1995), citing *Velle Transcendental Research Ass'n. Inc. v. Esquire, Inc.,* 41 Ill.App.3d 799, 354 N.E.2d 622, 625 (1976). In this case, Cook was residing in Ohio at the time Winfrey (residing in Illinois) made the defamatory statements alleged in Counts II and IV. As such, Ohio law applies to these counts, and we will consider them accordingly.

We also note that Cook has not bothered to file a response to the present motion. In a minute order dated May 19, 1997, we gave Cook until June 9 to respond to Winfrey's motion, and gave Winfrey until June 16 to reply. Cook did not heed our schedule, however, and no response has been filed to the motion to dismiss. As such, we have been given no additional insight to the allegations in Cook's complaint, and we must move on without his view of matter. With these matters resolved, we now move to the merits of the present motion.

### I. Count I: Defamation Per Se (Illinois)

■■■■ First, Cook alleges that he suffered per se defamation when, in January 1995, Winfrey caused to be published to third persons comments indicating that he was a liar who could not be trusted or believed. Cook alleges that Winfrey knew that these words were false at the time they were spoken, and that they greatly injured his reputation by impugning his good name, fame, and reputation. See Amended Complaint Count I. This claim must be dismissed, however, because it was filed outside of the Illinois statute of limitations. 735 ILCS 5/13–201 provides that

> Actions for slander, libel or for publication of matter violating the right to privacy, shall be commenced within one year next after the cause of action accrued.

*See* 735 ILCS 5/13–201. The limitations period begins to run on the date of publication of the allegedly defamatory material. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill.2d 129, 334 N.E.2d 160, 161 (1975). When publication occurs can be a matter of uncertainty; however, at its farthest reach, publication is deemed to have occurred "at the time [plain-

tiff] knew or should have known about the existence of the allegedly defamatory [statement]." *Id.* 334 N.E.2d at 164. From the allegations contained in the complaint, it is clear that Cook must have been aware of Winfrey's allegedly defamatory statements around January, 1995. The complaint states that Cook was attempting to publish articles about Winfrey at that time and that her statements were allegedly made while he was "entertaining offers." Since this suit was not filed until January, 1997, two years after Cook knew or should have known of Winfrey's alleged remarks, it does not comply with Illinois' statute of limitations. As such, we dismiss Count I of the complaint.

### II. Count II: Defamation Per Se (Ohio)

■■■■ In Count II of the complaint, Cook alleges that he suffered slander per se when Winfrey was quoted in the National Enquirer of February 18, 1997 as saying that "I will fight this suit until I am bankrupt before I give even a penny to this liar" and that "it's [this suit] all a pack of lies." *See* Complaint ¶ 21. Slander per se occurs when "the slander is accomplished by the very words spoken." *King v. Bogner,* 88 Ohio App.3d 564, 624 N.E.2d 364, 366 (1993) (citations omitted). In order for a remark to be considered slander per se under Ohio law,

> it must consist of words that import an indictable criminal offense involving moral turpitude or infamous punishment, impute some loathsome or contagious disease that excludes one from society or tend to injure one in one's trade or occupation.

*King,* 624 N.E.2d at 366, citing *McCartney v. Oblates of St. Francis de Sales,* 80 Ohio App.3d 345, 609 N.E.2d 216, 222 (1992). Whether a remark constitutes slander per se is a question of law to be decided by the court, if the alleged defamatory remark does not fit in any of the categories enumerated above, it cannot be slander per se as a matter of law. *King,* 624 N.E.2d at 366. Because we find that Winfrey's statements do not fit into any of the three categories, this count fails to state a claim as a matter of law and it must be dismissed.

It is clear that Winfrey's statements do not accuse Cook of a criminal offense or of having a disease, and they do not fall within either of those categories. The only possible type of slander per se it might be is that which injures a person in his trade or occupation. However, "to make words actionable because of their effect upon one's business or office, they must be said with reference to something connected with such business or office." *Motley v. Gombos*, 153 N.E.2d 465, 467 (Ohio Com.Pl.1958). The generic words "that liar" do not in any way implicate Cook's business or office, and the complaint does not allege that they were said in relation to Cook's occupation. As such, we find that Winfrey's statements do not fall within the last category of slander per se under Ohio law. Since the statements do not constitute slander per se as a matter of law, Count II is dismissed with prejudice.

### III. Count III: Defamation Per Quod (Illinois)

In Count III, Cook alleges that the statements made by Winfrey in 1995 (the same statements that form the basis for Count I) also constituted defamation per quod under Illinois law. However, as noted in Part I above, Illinois has a one-year statue of limitations on actions for defamation; Cook did not file his complaint until after the one-year time limit had expired. For the reasons set forth in Part I, therefore, Count III is also dismissed.

### IV. Count IV: Defamation Per Quod (Ohio)

In Count IV of the complaint, Cook alleges that Winfrey's statements in the January 18, 1997 National Enquirer (discussed in Count II above) constituted slander per quod. Slander per quod encompasses situations in which "the slander results from the listener's interpretation of the words through innuendo" rather than resulting directly from the words spoken. *King*, 624 N.E.2d at 366. The threshold issue in actions for slander per quod under Ohio law is whether the allegedly defamatory statements were capable of conveying a defamatory meaning to the average person hearing them.

*Biesiada v. Gyekenyesi*, 69 Ohio Misc.2d 14, 649 N.E.2d 924, 925 (Mun.1994). Whether or not the statements are actionable is a question of law to be decided by the court. *Mendise v. Plain Dealer Publishing Co.*, 69 Ohio App.3d 721, 591 N.E.2d 789, 792 (1990).

In Ohio, statements of opinion are "absolutely privileged" and cannot be the basis for a defamation suit. *Biesiada*, 649 N.E.2d at 926. Whether a statement is an opinion or a factual assertion is a matter of law, to be decided by the court. *Id.* (citations omitted). In determining whether a statement is fact or opinion, Ohio courts look to the "totality of the circumstances" *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 649 N.E.2d 182, 185 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 700, 133 L.Ed.2d 657 (1996), citing *Scott v. News-Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699 (1986). As such, a court must analyze the allegedly defamatory statement utilizing the following considerations: 1) the specific language used; 2) whether the statement is verifiable; 3) the general context of the statement: and 4) the broader context in which the statement appeared. *Id.* An analysis of these factors shows that Winfrey's statements that this suit is a "pack of lies" and that Cook is a "liar" are merely opinion, and Cook cannot maintain an action for slander based on them.

With regard to the first factor, the specific language used by Winfrey indicates that her statements were her opinions and not statements of fact. A statement such as "I will fight this suit until I am bankrupt before I give even a penny to this liar" is generally not taken seriously and does not convey to a listener that the speaker is making a factual assertion. Rather, a reasonable listener would take such a comment as an indication that the speaker had a negative opinion of the subject of the comment. This factor ties in with factor 2, since statements such as "he is a liar" are not necessarily concretely verifiable or subject to factual scrutiny. Most people, when saying someone is a liar or something is a pack of lies. are expressing their dislike for that person or the information they heard, not setting forth a factual assertion. Thus, the first two fac-

tors indicate that Winfrey's statements were opinion and not factual assertions.

Considering the third and fourth factors together, the context in which these statements were allegedly made shows that Winfrey, if she even spoke these words, was not making factual assertions. The statements were contained in the National Enquirer, a paper known for its sensational stories about celebrities. In addition, the story itself clearly shows that Winfrey is not being quoted directly by the reporter, but rather is having comments she allegedly made to a "friend" passed on to the paper. *See* Defendant's Exh. A (February 18, 1997 National Enquirer). The tone of the story is also an important consideration, since it attempts to show how outraged Winfrey was at the commencement of this suit and the comments purportedly made by Winfrey match the article's general mood. *Id.* A consideration of all of these factors indicates that an average person would not have taken the comments allegedly uttered by Winfrey as statements of fact but rather as statements of opinion. We find, therefore, that the statements made by Winfrey were her opinion, and as such she is entitled to privilege in this case. Since she is entitled to privilege, the comments cannot serve as the basis of a slander suit under Ohio law, and Cook's allegations fail to state a cognizable claim.

### V. Count V: Tortious Interference With Prospective Economic Advantage

■ In Count V of the complaint, Cook alleges that Winfrey's comments interfered with his ability to market his life experiences with her by effectively preventing him from entering contracts with third parties for that purpose. As such, he alleges that Winfrey committed the tort of interference with prospective economic advantage. In order to state a claim for this tort in Illinois, a plaintiff must allege 1) that he had a reasonable expectation of entering into a valid business relationship; 2) that the defendant had knowledge of his expectancy: 3) that the defendant purposefully interfered to prevent the plaintiff's legitimate expectancy from being fulfilled; and 4) that damages resulted to

him from the defendant's interference. *Delloma v. Consolidation Coal Co.,* 996 F.2d 168, 170–71 (7th Cir.1993), citing *Fellhauer v. City of Geneva,* 142 Ill.2d 495, 154 Ill.Dec. 649, 657, 568 N.E.2d 870, 878 (1991). Because we find that Cook has filed to sufficiently set forth these elements, Count V must be dismissed.

■ In order to state a cause of action, a plaintiff must allege "a business expectancy with a specific third party." *Schuler v. Abbott Laboratories,* 265 Ill.App.3d 991, 203 Ill.Dec. 105, 108, 639 N.E.2d 144, 147 (1993), citing *Parkway Bank & Trust Co. v. City of Darien,* 43 Ill.App.3d 400, 2 Ill.Dec. 234, 357 N.E.2d 211 (1976). Furthermore, he must also allege "action by the interfering party directed towards the party with whom the plaintiff expects to do business." *Id.,* citing *Galinski v. Kessler,* 134 Ill.App.3d 602, 89 Ill.Dec. 433, 480 N.E.2d 1176 (1985) (other citation omitted). Cook has not alleged either of these, and his claim must concomitantly fail.

■ First, Cook does not allege any specific parties with which he expected to do business but did not; he only makes general assertions that he was "attempting to seek compensation for the rights of publication of his experiences with Winfrey" and that his "ability to enter into contracts or business relationships with third parties" was interfered with. See Complaint ¶¶ 33 and 38. Cook does not specifically name any party with whom he had a legitimate expectation of entering a business relationship, and his claim is deficient. In essence, Cook claims in this count that people should have been interested in the story he had to tell but that he could not sell it to anyone. Unfulfilled hopes cannot be the basis for a claim of tortious interference with prospective economic advantage, however, and his failure to name any business expectancies with specific third parties is fatal to this claim.

Second, and stemming from his first problem, Cook has not alleged that Winfrey engaged in any activities directed toward a party with which he expected to do business. The basis of Cook's entire complaint is the statements by Winfrey that he is a liar and that he could not be trusted. There are no

allegations, however, that these comments were directed towards any specific third-parties, especially third-parties with whom Cook expected to do business. Because Cook has failed to name any specific parties or allege that Winfrey attempted to interfere directly with any specific party, Cook has failed to allege elements (1) and (3) above, and this count fails to state a claim upon which relief can be granted.

## VI. Count VI: Tortious Interference With A Contract

█ In Count VI, Cook asserts a cause of action for tortious interference with a contract. Cook alleges that Winfrey's statements that he was a liar and that she and Cook had never had a relationship interfered with a contractual relationship between himself and the National Enquirer. In order to state a cause of action for tortious interference with a contractual relationship, a plaintiff must allege the following elements: 1) the existence of a valid contract between the plaintiff and a third party, 2) defendant's knowledge of the contract, 3) the defendant's intentional and malicious inducement of the breach; 4) a subsequent breach by the third party due to the defendant's wrongful conduct; and 5) damages resulting from the breach. *Williams v. Shell Oil Co.*, 18 F.3d 396, 402 (7th Cir.1994), citing *Lusher v. Becker Bros., Inc.*, 155 Ill.App.3d 866, 108 Ill.Dec. 748, 749, 509 N.E.2d 444, 445, *appeal denied*, 115 Ill.2d 542, 110 Ill.Dec. 458, 511 N.E.2d 430 (1987) (other citations omitted). Because we find that Cook has not alleged all of these elements, we dismiss this count as well.

█ First, Cook did not adequately assert that there was either a valid contract between himself and the National Enquirer or that a valid contract was breached by the Enquirer. Cook alleges that he "entered into a contractual relationship with the National Enquirer" (Complaint ¶ 45) and that because of Winfrey's remarks, "the contract was not effectuated." (Complaint ¶ 49). The first statement does not establish that a valid contract existed between Cook and the Enquirer; it merely alleges that a contractual relationship existed between the parties. Similarly, the second statement does not show that the Enquirer breached a valid contract, but rather shows that a contract between the parties was not effectuated. It is established that no cause of action exists for intentional interference with a contract under Illinois law if the plaintiff has failed to establish that there was an actual breach of contract. *See George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1331 (7th Cir.1983). Thus, since Cook did not allege the existence of a valid contract or of a breach, he fails to state a cause of action.

█ Even assuming that Cook had adequately alleged these elements, he failed to assert that Winfrey induced the National Enquirer to breach the contract and his claim must fail. Under Illinois law, liability for tortious interference with a contract may only be based "on acts immediately directed at a third party which cause that party to breach its contract with the plaintiff." *Fuller*, 719 F.2d at 1331, citing *Mitchell v. Weiger*, 87 Ill.App.3d 302, 42 Ill. Dec. 543, 409 N.E.2d 38 (1980). Cook's amended complaint is devoid of allegations that Winfrey directed any acts toward the National Enquirer and induced them to breach their contract with Cook. In his complaint, Cook alleges that "Winfrey publicly and privately made the defamatory statements respecting Cook" and that "[s]ubsequent to Winfrey's defamatory statements respecting Cook, the contract was not effectuated." *See* Complaint ¶¶ 47, 49. He also asserts that Winfrey has "intentionally and without justification induced others to ... breach their contract ... with Cook", and that she has induced others to not enter contracts with Cook. *Id.* at ¶ 50. These general allegations that Winfrey made comments which caused Cook's relationship with the Enquirer to end do not establish that Winfrey directed her comments towards the Enquirer and induced the breach. The mere allegations that Winfrey made public comments which attack Cook's veracity does not show any attempt on her part to directly induce the Enquirer to breach a contract. As such, Cook does not allege all of the elements of his claim, and it is dismissed.

## VII. Intentional Infliction of Emotional Distress

█ Finally, Cook alleges that Winfrey's comments that he was a liar constitute intentional infliction of emotional distress. In order to state a cause of action for intentional infliction of emotional distress under Illinois law, a plaintiff must allege facts which establish that:

(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; [and] (3) the defendant's conduct in fact caused sever emotional distress.

*Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 282, 641 N.E.2d 498, 506 (1994), citing *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976). Because we find that Cook has not adequately alleged such a claim, we grant Winfrey's motion to dismiss this claim as well.

█ In order to be considered extreme and outrageous, a defendant's conduct must be of such a character that "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe,* 204 Ill.Dec. at 283, 641 N.E.2d at 507, citing Restatement (Second) of Torts § 46, comment d, at 73 (1965). Put differently, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Public Finance,* 4 Ill.Dec. at 654, 360 N.E.2d at 767. In determining whether the defendant's conduct is so qualified, an objective standard, based on all the facts and circumstances of the particular case, is employed. *Id.,* citing *McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806 (1988). The facts alleged in Cook's complaint, taken as a whole, do not allege that Winfrey's conduct was objectively "Outrageous!", and Cook has failed to adequately plead a claim of intentional infliction of emotional distress.

█ The allegations in the complaint assert that Winfrey engaged in the following conduct with respect to Cook: she stated that he was a liar who was not to be trusted or believed, that he would be very sorry if he told his story to anyone else, and denied any relationship with Cook (Complaint ¶ 13): she allegedly stated that she would "fight this suit until I am bankrupt before I give even a penny to this liar [Cook]" (Complaint ¶ 21); she allegedly stated that this present case is a "pack of lies" (Complaint ¶ 22); and she stated that she has done "what is proper to stop him from spreading his lies" (Complaint ¶ 37). Viewing the situation as a whole, these alleged comments by Winfrey are not "Outrageous!", and there was no extreme or outrageous conduct on the part of Winfrey in this case.

█ The gist of Cook's allegations are that Winfrey called him a liar and denied that she had had a relationship with him or abused drugs. Winfrey's denials of Cook's assertions can hardly be called "Outrageous!" conduct—merely stating that something claimed as fact by another person did not happen is not outrageous in the least. Similarly, calling someone a "liar" does not amount to outrageous and extreme behavior. It is clear that "[m]ere insults, indignities, threats, annoyances, petty oppressions or trivialities" are not actionable as intentional infliction of emotional distress. *Oates v. Discovery Zone,* 116 F.3d 1161, 1174 (7th Cir. 1997), quoting *McGrath,* 127 Ill.Dec. at 727, 533 N.E.2d at 809. Similarly, the tort does not encompass acts which are only "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair." *Oates,* 116 F.3d at 1174, citing *Miller v. Equitable Life Assurance Society,* 181 Ill.App.3d 954, 130 Ill.Dec. 558, 560, 537 N.E.2d 887, 889 (1989) (other citations omitted). Winfrey's alleged comments were at worst insults, and as such they cannot be the basis for a claim of intentional infliction of emotional distress.

Furthermore, the context in which these comments were allegedly made also shows that they were not outrageous. According to the complaint, Cook was attempting to sell juicy information he knew about Winfrey, a national celebrity, to various sources. In reaction, Winfrey denied that Cook's allegations were true, stated that he was lying, and

stated that she would try to stop him from publishing the information. Winfrey's reaction to the situation with which she was faced cannot be said to be objectively outrageous or go beyond the bounds of human decency. Cook has not alleged that Winfrey ever engaged in more than verbal activity, and such a reaction is not extreme or outrageous in this case. Since Cook has failed to allege that Winfrey acted in an outrageous manner, his claim for intentional infliction of emotional distress is deficient.

 Even if Cook had alleged outrageous conduct on the part of Winfrey, he has failed to allege that he suffered severe emotional distress, and his claim is insufficient at any rate. It is established that the infliction of emotional distress is not enough to precipitate liability in Illinois; the emotional distress must be severe. *Public Finance*, 4 Ill.Dec. at 654, 360 N.E.2d at 767. Thus,

> [a]lthough fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term "emotional distress," these mental conditions alone are not actionable. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. . . ."

*Id.*, quoting Restatement (Second) of Torts, sec.46, comment j (1965). In his complaint, Cook asserts that he suffered from "great anxiety, nervousness, humiliation, fright, sleeplessness, nausea and apprehension" as a result of Winfrey's actions. *See* Complaint ¶ 56. However, these reactions are not so terrible that the average man could not be expected to endure them. While certainly unpleasant, Cook's allegations manifest that he suffered from fright, not "severe" emotional distress, and he has failed to allege this element of his claim as well. Since his claim is insufficient in several respects, it is dismissed.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is granted, and the plaintiff's amended complaint is dismissed.