(No. 88-CC-0108-

STANLEY D. PARR and GRACIE PARR d/b/a REDWOOD MOTOR INN, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1999.*

HALL LAW FIRM (CHARLES C. HALL, of counsel), for Claimants.

JIM RYAN, Attorney General (TERENCE J. CORRIGAN, Assistant Attorney General, of counsel), for Respondent.

OPINION

JANN, J.

This matter was heard on the Claimants' amended count II and amended count III. An order was entered on March 25, 1993, granting Respondent's motion for summary judgment on the original counts I through III. On rehearing the Court allowed the Claimants to file

amended count II and amended count III. Amended count II alleges an interference with the Claimants' business expectancy and amended count III alleges the disturbance of the Claimants' right to the use of their land and is based on a theory of nuisance and resulting property damage.

On August 10, 1988, a writ of injunction was issued in the Circuit Court of Vermilion County, Danville, Illinois, in *Parr v. Neal*, No. 86-CH-56, enjoining the Department of Corrections from firing weapons upon or at the Danville Correctional Center Weapons Firing Range at its present location, adjacent to Claimants' property. The injunction was affirmed by the Fourth District Appellate Court.

The facts of the case were presented through transcripts of testimony from the hearing on injunctive relief in the Circuit Court of Vermilion County, which transcripts were introduced as Claimants' exhibit nos. 10, 11 and 12; testimony presented at the Court of Claims hearing; and exhibits filed with the Court.

### Evidence Presented at Hearing

In April of 1986, the Claimants owned and managed the Redwood Motor Inn located at 411 Lynch Drive, Danville, Illinois, having owned the motel since July of 1978. At the time in question, the motel occupied over 40 acres, and 59 buildings were located on the premises. There were 94 rooms available for rent, a storage barn, a metal shed, a swimming pool, a covered swimming pool, a restaurant/lounge building, the motel office and a gas station building. The motel offered A-framed chalets, regular rooms, and deluxe executive rooms.

In the early 1980s, the Danville Correctional Center, an institution of the Illinois Department of Corrections,

was built north of the Redwood Inn. Located between the correctional center and the Redwood Inn property were 22½ acres of farm land, also owned by the Claimants. The firing range at the Danville Correctional Center was located on the south side of its property next to the farm land owned by the Claimants. The firing range was approximately 900 feet from the deluxe executive rooms which were located at the rear of the motel property. In addition, the sewer plant and wells for the motel were located on the farm land between the motel and the firing range.

In April of 1986, the Department of Corrections began using the firing range, and on several occasions used it for firing throughout the night time hours. When the firing at the range started, the Redwood Inn lost business on a daily basis. On at least one occasion, Mr. Parr remained on the premises overnight and heard firing in the middle of the night that was very loud and which woke him out of a sound sleep.

Mr. Parr testified that he had previously met Warden Michael Neal of the Danville Correctional Center during the building of the correctional center but that when he attempted to contact the Warden to complain of the noise, his telephone calls were not returned.

On at least one occasion, when the Redwood Inn's maintenance man went out to service the sewer plant, the sheriff came by to check his identity. The Claimants assumed that the prison officials had called the sheriff, but they did not have any evidence that this was so. However, the Claimants were told by the sheriff not to go on the farm land without contacting the prison and the Claimants felt constrained in the use of their land by this.

In November and December of 1986, Mr. Parr found projectiles some 50 feet into his land. In March of 1987, he found a shell casing some 75 to 100 feet into his

land, and on June 24, 1987, he found a projectile approximately 25 feet into his land.

Mr. Parr testified that, prior to the opening of the firing range, they had for several years done business on a regular basis with young, professional people coming from abroad to do programming work at the TeePak plant which was located in Danville, and that the Redwood Inn had often rented ten to 12 rooms for periods of two to three months each to TeePak people. After the firing started, the TeePak business ceased entirely and the motel did not get their business back.

Mr. Parr offered exhibits and testimony concerning the occupancy figures for the motel and the losses which occurred after April of 1986. These matters will be addressed in greater detail later in our opinion.

The transcript of the testimony of Robert Lucas, an expert for the Claimants who had testified in the Vermilion County case, and whose background was in law enforcement and security design and training, including firing ranges, was introduced. Mr. Lucas went into great detail concerning the layout and the procedures in place for the firing range, including the berm whose purpose was to contain the rounds fired at the range. He was greatly concerned about the dangers posed by the use of rifles at the range. The type of rifle used at the range had a "killing range" of nearly one mile, well within the area occupied by the Redwood Inn. Also, the dangers were compounded by the presence of a tower at the range from which the employees practiced firing. The tower was nearly as high as the berm, and an unintended firing from the tower had the potential for great danger. The projectiles found by Mr. Parr matched those regularly fired at the range and Mr. Lucas considered this as evidence that the Department was not successful in keeping the projectiles fired at the range within the confines of the range.

## Count II
### Interference with Claimants' Business Expectancy

Amended count II rests on a claim of interference with business expectancy. The elements of the tort of interference with a business relationship that the Claimants must prove are:

(a) The existence of a valid business relationship or expectancy;

(b) Knowledge of the relationship or expectancy on the part of the interferer;

(c) An intentional interference inducing or causing a breach or termination of the relationship or expectancy;

(d) Resultant damage to the party whose relationship or expectancy has been disrupted.

*Fryman v. Board of Trustees* (1989), 42 Ill. Ct. Cl. 132, 166, further held that Illinois law requires the interference to be "intentional, unjustified, and malicious." In order to prevail, the Claimants must prove each element of the tort by a preponderance of the evidence. In this case, the Claimants did prove that they had a valid business relationship or expectancy with both regular, repeat clients of the motel and people who might utilize their services in the future, and they proved that the warden of the correctional center was aware of their business in that he had met with Mr. Parr during the construction of the institution and discussed being a "good neighbor." In addition, the Claimants proved that they had suffered damages as a result of the interference. However, Claimants presented no evidence that the interference was intentional, unjustified, and malicious.

This case is similar to that of *Parkway Bank and Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400,

357 N.E.2d 211, 2 Ill. Dec. 234, in which the plaintiffs sought damages from the rezoning of their land. The Court in *Parkway* stated that interference with a business relationship is a purposely caused tort and found that there were no facts stated that would suggest that the Defendants had as their purpose the interference with plaintiff's real estate business. (43 Ill. App. 3d at 403, 404, 357 N.E.2d at 214, 215, 2 Ill. Dec. at 237, 238.) Here, there was no evidence presented that the purpose of the Department of Corrections in operating the firing range was to interfere with the Claimants' business. In fact, the evidence was clear that the purpose of the operation of the firing range was to qualify and maintain the qualifications of the employees of the Department of Corrections for their firearms ratings and training. There was nothing to show any intention on the part of the Respondent to do any damage to the Claimants' business.

## Count III
## Nuisance

Amended count III is based upon a theory of nuisance in the disturbance of the Claimants' rights to the use of their land. The Circuit Court of Vermilion County, Danville, Illinois, in *Parr v. Neal*, No. 86-CH-56, found that the range was a danger to personal safety and a private nuisance. These findings were upheld by the Fourth District Appellate Court. Decisions of the Circuit Court are *res judicate* as to the same issues in the Court of Claims. *McNeil v. State* (1995), 47 Ill. Ct. Cl. 432; and *Lehman v. State* (1991), 44 Ill. Ct. Cl. 178.

In addition, the evidence presented is sufficient to uphold the Claimants' burden of proof. This case is similar to that of *Schatz v. Abbott Laboratories* (1987), 51 Ill. 2d 143, 281 N.E.2d 323. In *Schatz*, the Illinois Supreme Court upheld the award of damages to a movie theater

business which were suffered as a result of noxious odors emitted from the Defendant's manufacturing plant in North Chicago. Here, the actions of the Respondent in placing the firing range in the location in question created a nuisance, damaged Claimants' business, and caused a loss of enjoyment in the use of their land. The sound of the weapons firing at various hours of the day and night disturbed people staying at the motel and caused a decrease in business, especially the repeat business from TeePak and others which the motel had formerly enjoyed. In addition, there was danger of injury from the firing range, both to people at the motel and on the agricultural land located north of the motel.

Robert Lucas, the Claimants' expert witness who had prepared designs for the safe layout of firing ranges, identified the projectiles found by Mr. Parr as being of the type fired from the range and it was his opinion that these projectiles had been fired from the range. Lucas was concerned because the rifles fired at the range had a killing range of nearly one mile, well within the distance from the range to both the agricultural land and the motel property. The danger of unintentional fire was increased by the location of the tower which was used to simulate firing from a guard tower. Although the safety procedures and the overall layout of the range were within general safety parameters, the location of the range so close to an occupied area made it a danger in Lucas' opinion.

This danger, along with the excessive noise from the range, constitutes a nuisance and the Claimants have upheld their burden of proof under the tort of nuisance.

## Damages

In determining damages for nuisance, there are two types of nuisances: temporary or permanent. A permanent nuisance is one characterized as continuing indefinitely

and a temporary nuisance is one which is occasional, intermittent, or recurrent and is remediable, removable or abatable. (*Tamalunis v. City of Georgetown* (1989), 185 Ill. App. 3d 173, 183, 184, 542 N.E.2d 402, 409, 134 Ill. Dec. 223, 230). In *Tamalunis* the Fourth District Appellate Court held that, "In addition, a nuisance which is caused by the negligent construction of a legal enterprise or the negligent manner of its operation is generally considered temporary (58 AmJur.2d Nuisances sec. 118 (1971).)" 185 Ill. App. 3d at 184, 542 N.E.2d at 409, 410, 134 Ill. Dec. at 230, 231.

The measure of damages for a temporary nuisance is the personal inconvenience, annoyance, and discomfort suffered on account of the nuisance (*Tamalunis*, 185 Ill. App. 3d, at 184, 542 N.E.2d at 410, 134 Ill. Dec. at 231), and, where damages flow from a loss of business, the loss of profits suffered because of the nuisance. *Schatz v. Abbott Laboratories* (1972), 51 Ill. 2d at 148, 281 N.E.2d at 326.

Claimants offered evidence concerning the loss of revenue suffered by them. This evidence was in the form of testimony by Mr. Parr concerning his day-to-day observations of regular customers not returning, including the TeePak people, his log of month-to-month room sales from 1983 through 1989 (Claimants' exhibit no. 9), and his testimony that, between 1984 and 1988, the number of motels in the Danville area remained the same. Also, Claimants presented the testimony of Joel David Martin, a certified public accountant with Fox & Crowder, Ltd., a Danville accounting firm. Mr. Martin testified as an expert witness concerning his determination of the lost net profits for the Redwood Inn for 1987 and 1988.

In making his determination, Mr. Martin relied upon the City of Danville hotel/motel tax revenues from 1984 to 1989, the room sales records of the Redwood Inn for

that same period, the 1987 and 1988 tax returns for the Redwood Inn, information concerning the number of additional rooms sold in the area in 1987 because of the TeePak fire (which rooms would have all been rented by the Redwood Inn because of its arrangement with TeePak, if the TeePak people had not gone elsewhere because of the noise from the firing range), calculations of the Redwood Inn's net profit per room sold for the two years in question, and his projection of room sales for the Redwood Inn based upon the percentage increase in the City of Danville hotel/motel tax revenues.

Based upon his calculations, to a reasonable degree of accounting certainty, Mr. Martin estimated that the Claimants' lost income for 1987 was $66,518 and for 1988, $65,143.

Respondent introduced into evidence the Redwood Inn's occupancy rates and room revenues for 1990 to 1995 (Respondent's exhibit no. 1) but this information is not relevant since new motels were built at Danville in 1989 and 1990 thus rendering these figures not suitable for comparison purposes.

In addition, the Claimants sought damages for loss to the 22½ acres of agricultural land located between the firing range and the motel property. Claimants called an expert witness, Kenneth W. Cunningham, a certified general real estate appraiser for the states of Illinois and Indiana. Mr. Cunningham testified that, in his opinion, the Claimants suffered a loss of $16,000 for the two years in question because they lost the opportunity during that period to sell the land for its highest and best use. Mr. Cunningham did not take into account the fact that the land in question was rented for agricultural purposes during 1987 and 1988 for $1,500 per year, and he had made no calculations as to any loss of profits from a recreational vehicle

park that Mr. Parr had testified they were thinking about establishing on this land before the firing began at the range.

Since this is a temporary nuisance which has been enjoined, the Claimants' measure of damages for the 22½ acres in question is limited to the loss of use and income for the period in question. Mr. Cunningham's testimony as to his opinion as to loss of value during the period 1987-1988 is based on his estimation of loss in value for the property during that time, which is not one of the measures of damages for a temporary nuisance. The purported loss in value from 1989 on is not relevant. Claimants have failed to prove any loss for the 22½ acres as there was no evidence that the actual income to the land, the $1,500 per year from renting it out for farming, was any less during the period in question than it had been before. The Claimants' plans to possibly develop the land for an RV park appears to have been only a thought on the Claimants' part and not any type of developed project that was thwarted by the Respondent's actions. No evidence was offered by the Claimants as to expenses, projected profits, and losses for the project, and any loss that might be claimed from this project would be pure speculation.

The Claimants did apparently suffer some inconvenience in not being able to tend to their sewer plant and well which were located on this land without letting the prison know that workmen would be out there, but the evidence does not contain any specificity concerning how prevalent this inconvenience was, what steps they had to take to cope with it, and how they were affected by this.

In determining the measure of Claimants' damages, we find the total damages are $131,661. The firing range was in operation from April of 1986 to August of 1988, a

period of slightly more than two years. The figures presented by the Claimants for 1987 and 1988 lost profits appear to establish their loss within the "fair degree of probability" required by *Schatz*, 51 Ill. 2d at. 148, 149, 281 N.E.2d at 326.

As the Claimants' damages are limited to $100,000 by the provisions of section 8(d) of the Court of Claims Act (705 ILCS 505/8(d)), under which jurisdiction the complaint was brought, and the proven damages are in excess of that amount, it is hereby ordered that $100,000 be awarded to the Claimants in full satisfaction of their claims.

This cause is dismissed.